CHARLES H. ROSENSTIEL

*v.*

WILLIAM S. GRAY *et al.*

*Filed at Ottawa September 27, 1884.*

1.  PARTNERSHIP—*accounting between partners—overdraft by one partner—how adjusted.* On bill for an accounting between partners, it is not proper to render a personal decree against one partner for the excess of his receipts over his disbursements, until his interest in the firm assets has first been exhausted, to make good the deficiency.

2.  A partner had overdrawn his private bank account for a considerable sum, the checks having been applied to the benefit of the firm, for which he received credit on the firm's cash book. The firm then drew a draft on him for such amount in favor of the bank, which he accepted, and the amount was credited on his bank account. He afterward paid a portion of the amount

of the draft out of his own money, and the note of the firm was given for the balance: *Held*, that he was not entitled to have the part of the draft paid by him credited in his favor in the partnership account, as he had already received credits for the same on the firm books.

3. SAME—*in case of a new partner—adjustment as to amount due him from the firm.* Where a person acquired an interest in a partnership and its property prior to the dissolution of the firm, and was recognized as a partner, it was *held*, that he was a proper party to a bill for an adjustment of the partnership and for the statement of an account, and there was no error in decreeing that the defendant partner pay him a sum found to be due him, even though the defendant had not consented to his becoming a partner.

4. SAME—*sale by one partner—what passes thereby.* The sale by one of three partners of all his interest in the partnership property, including debts due the firm, will pass only his share of what would remain after the payment of all the debts of the firm, including a debt due from the firm to another partner for advances. A purchaser of a partner's interest in the partnership property acquires only such interest as the vendor had, and that is, his share of the residue after the affairs of the partnership are wound up and the debts paid, including the balance due one partner from the others on the partnership account. .

5. SAME—*contract of sale of one partner's interest—construed, as to the extent of the interest sold.* A contract for the sale of a partner's interest in all the assets of a firm, including the real and personal property and the notes and accounts due the firm, the purchaser to assume the vendor's *pro rata* share of the indebtedness of the firm, contained a clause that the purchaser should acquire no right in any claim the vendor might have against his former partners, and was to assume no liability for any claims or unsettled accounts of the vendor to his former partners. It was *held*, this would not affect any accounts due to or from the firm by or to the vendor; but such individual accounts of the partners would be left to be settled between themselves.

6. SAME—*new partner—acquiescence by the other partners.* Where a person purchased an interest in a partnership and its property and effects, from two of three partners, and the name of the firm was changed accordingly, and the business carried on in the name of the new firm without objection, until the other partner, several months afterwards, sold his interest, it was *held*, that an acquiescence might be inferred in the purchaser becoming a member of the firm, without any direct evidence of consent.

7. PARTIES—*to bill for an accounting between partners.* After the sale by one of three partners of all his interest in the firm property and assets, a bill was filed by the other two partners against him, for an account, and he was charged with one-third of an advance made by one of the other partners, to which an exception was taken and disallowed: *Held*, that the purchasers in such case were necessary parties to protect their rights, the court, however, expressing an opinion that the exception should have been allowed.

8. RECORD IN SUPREME COURT—*whether certain matters copied into the transcript are a part of the record.* In a chancery suit, there was no certificate preserving any evidence, all the testimony being in depositions taken by the master, and returned with his report. One witness testified, in his deposition, to the making of an invoice of partnership property and debts due the firm. An invoice and account were copied into the transcript of the record, which were not referred to in any deposition further than above stated: *Held,* that the invoice and account could not be considered as a part of the record.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. L. HIGH, for the appellant:

The account was taken on an erroneous basis, by which the gains or profits were excluded. *Richardson* v. *Bank of England,* 4 M. & C. 165; *Crawshay* v. *Collins,* 2 Russ. 347; *Foster* v. *Donald,* 1 J. & W. 252; *Buckingham* v. *Ludlam,* 29 N. J. Eq. 345; *Moore* v. *Wheeler,* 10 W. Va. 35.

The real interest of a partner in the partnership stock, etc., is the balance found due to him after the payment of all the partnership debts and the adjustment of the partnership account between the partners. *Bopp* v. *Fox,* 63 Ill. 540; *Remick* v. *Emig,* 42 id. 342.

The purchaser or assignee of the interest of a partner takes no more than the partner's interest. *Taylor* v. *Field,* 4 Ves. 395; *Chandler* v. *Lincoln,* 52 Ill. 74; *Rainey* v. *Nance,* 54 id. 29.

The master erred in going behind the account stated on January 29, 1873.

The court erred in decreeing in favor of Robey, who was not a partner, and in disallowing Rosenstiel's payment on overdraft to the bank.

Mr. CHARLES H. ROSENSTIEL, *pro se.*

Mr. U. D. MEACHAM, also, for the appellant.

Mr. R. H. NILES, for the appellees:

The invoice and account of January, 1873, are not a part of the record, not being preserved in the bill of exceptions, and can not be considered. *Corey* v. *Russell,* 3 Gilm. 366; *Brockenbrough* v. *Dresser,* 67 Ill. 225; *McIntosh* v. *Saunders,* 68 id. 128.

Counsel also made answer to the several points made by appellant, and discussed the evidence applicable to each.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the Second District, affirming a decree of the circuit court of Stephenson county, upon a bill for the settlement of partnership accounts. The bill was filed by the appellees, William S. Gray, David H. Sunderland and William W. Robey, against the appellant, Charles H. Rosenstiel, averring that on February 23, 1865, Gray, Rosenstiel and one Henderson entered into written articles of co-partnership, whereby they were to contribute equally to the capital and share equally in the profits and losses of the business of manufacturing and selling woolen goods; that they purchased land and water powers, erected a woolen manufactory, and prosecuted the business until July, 1865, when Henderson sold to the complainant Sunderland, by consent of his co-partners, all his interest in the business, whereupon Sunderland, by the consent of Rosenstiel and Gray, became a member of the firm, under the name of C. H. Rosenstiel & Company, and that the business was so continued until March 4, 1873; that about the last named date, Gray and Sunderland sold to Robey an undivided one-third of their interest in the business, whereby Robey became equally interested with Gray and Sunderland; that the business was continued until June 14, 1873, when Rosenstiel sold to George Thompson and Charles D. Blanch-

ard all his interest in the firm, being an undivided one-third. The bill prayed an accounting of all the co-partnership business from the time of its commencement up to the time of the termination of the same by the sale by Rosenstiel of all his interest therein to Thompson and Blanchard. The answer was a general denial. The cause was referred to a master, with direction to take and state an account between the parties, and report his findings to the court. The master's report found that the three partners, Rosenstiel, Sunderland and Gray, had each put into the business $7000; that $4332.84 was the amount owing from Rosenstiel to the firm; and stated the accounts of the parties with each other, as follows: Due from Rosenstiel to Gray, $2545.42; due from Sunderland to Gray, $1254.62; due from Robey to Gray, $1058.57; due from Sunderland to Robey, $196.05; due from Rosenstiel to Sunderland, $660.53; due from Rosenstiel to Robey, $954.61.

Various exceptions were filed by Rosenstiel to the report of the master, all which the court overruled, and entered a decree approving the report, and decreeing the payment of the sums as therein found. One of the exceptions was that the theory of the accounting was erroneous. There was no account taken of the partnership assets or profits, but the accounting was limited to the basis of receipts and expenditures by the partners. The aggregate of Rosenstiel's cash receipts over expenditures was the amount which the master found to be owing from him to the firm. No doubt the general rule is, as stated by appellant's counsel, that whatever sums may have been advanced by one partner or received by another during the continuance of the co-partnership, only constitute items in the account when finally taken, and are in no sense personal credits or personal liabilities to be enforced by a personal decree, and that there can be no personal decree against a partner on account of an excess of his receipts over his disbursements, until his interest in the firm assets has

been first exhausted, to make good such deficiency. The master's justification, made by him, of the mode of taking the account, was in the terms of the contract of sale from Rosenstiel to Thompson and Blanchard, because, as the master considered, Rosenstiel sold out to them in such a way as to pass to them his one-third in the property and effects of the firm, leaving the individual accounts of the partners to be settled between themselves. We think the master was correct to the extent of any accounts due to or from Rosenstiel. In respect to any such accounts, the contract seems to express that the interest sold to Thompson and Blanchard was to be unaffected thereby, and that such individual accounts of the partners were left to be settled between themselves. That contract of sale was as follows:

"Freeport, *June 5, 1873.*

"We, the undersigned, do hereby mutually agree with each other as follows, to-wit: C. H. Rosenstiel agrees to sell to Charles D. Blanchard and George Thompson the undivided one-third interest in the property known as the Freeport Woolen Mill, to-wit: one-third of the real estate, one-third of the buildings and machinery, one-third of the manufactured goods and raw material now on hand, one-third of the notes and accounts due said firm,—said property, real and personal, being now jointly owned by said C. H. Rosenstiel, D. H. Sunderland, W. S. Gray and W. W. Robey,—C. H. Rosenstiel hereby agreeing to make a good and sufficient deed and conveyance for the same, and C. D. Blanchard and George Thompson agreeing to pay for the said property the total sum of $6500, payable as follows: $3500 cash on making and delivery of deed, $1000 in three (3) years, $1000 in four (4) years, $1000 in five (5) years, with interest at ten per cent per annum received on the premises sold, interest payable annually; and said C. D. Blanchard and George Thompson to assume their *pro rata* share of the indebtedness now due

by the firm of which C. H. Rosenstiel is now a member, engaged in said milling business. It is also fully understood and expressly agreed that said C. D. Blanchard and George Thompson acquire no right in any claim said C. H. Rosenstiel has or may have against his former partners, W. S. Gray and D. H. Sunderland, and they assume no responsibility or liability for any claim or unsettled accounts due by said C. H. Rosenstiel to his former partners, but said C. H. Rosenstiel is to settle and arrange all accounts and claims with his said firm partners; and C. H. Rosenstiel acknowledges the receipt of $100 cash, paid by George Thompson.

C. H. ROSENSTIEL,
GEO. THOMPSON."

Another exception to the master's report is, that the master debits Rosenstiel with one-third of $5278.32, claimed to have been advanced by Gray of his own money during the period of time he had the management of the business of the firm. We are inclined to think this exception to the report should have been sustained. The indebtedness for these advances was not on the part of Rosenstiel, but of the company. What Rosenstiel sold to Thompson and Blanchard was his one-third interest in the partnership property. This interest was something, only, which would be remaining after the payment of this firm's liability for these advances and other partnership debts, the rule being, that the purchaser of an interest of one of the co-partners in partnership property acquires only such interest as the vendor had, and that is, his share of the residue after the affairs of the partnership are wound up and the debts paid, including the balance due one partner from the other on the partnership account. (*Bopp* v. *Fox*, 63 Ill. 540; *Rainey* v. *Nance*, 54 id. 36.) To qualify such a sale of a partner's interest, and hold it to pass exempt from the deduction of any partnership liability, would require an intent to that effect clearly to appear. We discover here no such

intention to be shown as respects these advances by Gray. It is expressed that Blanchard and Thompson acquire no right in any claim Rosenstiel has against his former partners, and that they assume no liability for any claim due from Rosenstiel to his former partners, and this is all, being claims due to and from Rosenstiel. Nothing is said with respect to anything due to Gray. No intimation is expressed that there was to be any liability of Rosenstiel in respect to that, or that it was not to enter into the accounting and be adjusted from the partnership assets before there would be the ascertainment and determination "of what was the interest which passed by Rosenstiel's sale." The provision, it is true, ends with saying, "but said C. H. Rosenstiel is to settle and arrange all accounts and claims with his said firm partners." This we understand to have reference to such accounts and claims as had been immediately before spoken of, to-wit, such as were due to and from Rosenstiel himself. We are sufficiently inclined to this view to say that this exception should have been sustained, without the expression of a definite opinion, in the absence of Thompson and Blanchard, whose interests are directly involved in the matter, and who should be made parties, in order that they may have an opportunity to be heard in support of their rights.

It is insisted that the master erred in going behind an alleged account stated by Gray and Sunderland on the 29th of January, 1873. It is stated by appellant's counsel that upon that date, Gray, Sunderland, and one H. P. Carey, representing Rosenstiel, made an invoice of the goods and merchandise, including the individual accounts of each partner with the firm, which showed Rosenstiel's indebtedness to the firm to be only $1704.40, and Gray's indebtedness to be $715.04; that this appeared in the books of the company, entered in Gray's own handwriting. All that we discover in the record touching this alleged invoice and account stated, is the statement of Gray, in his testimony before the master,

that in the winter of 1872–3 he and Sunderland made an invoice of the stock in hand, which included a statement of the debts and obligations due the firm.   There appears copied in the transcript of the record, an invoice of the date 29th January, 1873, which shows a statement of Rosenstiel's and Gray's indebtedness to the firm to be, respectively, $1704.40 and $715.04, as above named; but it does not appear from the testimony of any witness or any statement of the master, to be identified as made by any one, or as taken from the books of the firm.   There was no certificate of evidence preserving any testimony, but all the testimony was in the shape of depositions returned by the master in connection with his report.   But we do not find this invoice and account stated, which appears in the transcript, to be in anywise referred to in any deposition, further than as above mentioned in the testimony of Gray.   We do not consider, then, this alleged invoice and account stated as being a part of the record, and can not notice it as such.

An exception was taken to the disallowance of appellant's payment of $2375 on overdraft of $4458.   On September 29, 1866, the individual account of Rosenstiel at the First National Bank was overdrawn to the amount, with interest, of $4458, which had been checked out by Rosenstiel for the benefit of the firm.   On that date the firm drew a sight draft upon Rosenstiel for this amount, which he accepted, and which the bank credited to Rosenstiel's account, to make good the overdrafts for the benefit of the firm.   Between this date and January 5, 1867, Rosenstiel deposited in the bank, of his individual funds, the sum of $2375.   On the last named day the draft in favor of the bank was paid by the application of this individual deposit of Rosenstiel of $2375, and by the note of the firm for the balance of $2160.20. Thus, it is said, Rosenstiel's individual funds were used to the extent of $2375 to pay the indebtedness of the firm, evidenced by the draft of $4458, and that the master erred in

refusing to credit him with this $2375. We understand, from Rosenstiel's testimony, that whatever part of the $4458 was drawn from the bank for the use of the company, was credited to Rosenstiel on the company's cash book as fast as drawn, and the company having been once charged with these sums in its account with Rosenstiel, should not again be called on to pay to Rosenstiel an amount equal to the aggregate. To give the credit claimed would, as we view it, be the allowance of a double credit to Rosenstiel, and we think the master was right in the disallowance of the payment.

It is urged that there was error in finding and decreeing payment to Robey, because Rosenstiel never consented that the latter should become a member of the firm. It appears that Robey acquired an interest in the firm in March, 1873, by purchase from Sunderland and Gray, and that the firm name was then changed to Gray, Robey & Co. All this, it is said, was done without the knowledge or consent of Rosenstiel. Although there be no direct evidence of any actual knowledge of or consent to the admission of Robey to the firm on the part of Rosenstiel, yet, from the length of time which elapsed from Robey's purchase into the firm, and change of the firm name, until the sale of Rosenstiel's interest in June, 1873, with no objection appearing on the part of Rosenstiel, there would be ground of inference of an implied acquiescence by Rosenstiel in Robey's becoming a member of the firm. But supposing Robey was not a partner with the consent of Rosenstiel, he was a joint owner with Gray, Sunderland and Rosenstiel at the time Rosenstiel went out of the firm, and as such was a necessary party to any suit for a distribution of the assets, and might, we think, not improperly, have a decree for any sum that might be found due him on account of the firm property, and even against Rosenstiel. It caused no increase of the amount found due from Rosenstiel, and we do not perceive that it made with him any essential difference, or afforded any substantial cause

of complaint, that he was decreed to pay a portion of such amount to Robey, who was entitled thereto, instead of the whole amount to the two other partners.

For the error which has before been indicated, the judgment will be reversed, and the cause remanded for further proceedings, with leave to amend the bill, and add parties, and take further proofs, as the parties may desire.

*Judgment reversed.*

Mr. JUSTICE WALKER: I hold that Rosenstiel sold a third of the debts owing by the partners to the firm, precisely as he did debts owing by others to the firm, and he has therefore no claim to be allowed for the claims of the firm against the partners thus sold.