HORACE G. PRINDLE, Appellant, *v.* THE WASHINGTON LIFE INSURANCE COMPANY, Respondent, Impleaded, etc.

*Action against a corporation for services — liability under an implied assumpsit upon a joint and not a several undertaking — a right to assess expenses does not present a condition precedent.*

Where persons, either officers in fact or agents, assume to act in behalf of a corporation, and employ a person to perform a service for the corporation, and such service is performed with the knowledge of the directors and principal officers of the corporation, and such corporation receives the benefit of such service without objection, the corporation is liable under an implied assumpsit for the value of such services.

Where a person was employed as an attorney, by persons assuming to act as a committee for and on behalf of certain corporations, and services were rendered and received by such corporations, without any knowledge on the part of such attorney of certain resolutions adopted by the corporations limiting the power of the committee which had engaged him, his right of recovery will be held to rest upon the joint and not the several undertaking of such corporations. (MERWIN, J., dissenting.)

Such resolutions contained the provision that the committee apportion the expense ratably among the companies and call in the necessary contributions in installments as they should be required.

*Held,* that evidence of a refusal to make a proper assessment under the resolutions was not a condition precedent to the attorney's recovery from such corporations. (MERWIN, J., dissenting.)

APPEAL by the plaintiff, Horace G. Prindle, from a judgment of the Supreme Court in favor of the defendant, the Washington Life Insurance Company, entered in the office of the clerk of the county of Chenango on the 13th day of December, 1892, upon the report of a referee, and dismissing the plaintiff's complaint on the merits as against the defendant, the Washington Life Insurance Company.

The action was brought to recover for professional services alleged to have been rendered for the fourteen defendants mentioned in the pleadings. The summons and complaint were served upon the respondent, and the answer of the defendant, who is the respondent here, was the only answer served. The issue thus joined was referred and a trial had, and a judgment ordered in favor of the respondent against the appellant, with costs.

The referee found, among other things :

VIII. That the said defendants, for the purpose of carrying out their objects effectively, appointed a committee, consisting of Timothy H. Brosnan, president of the defendant the United States Life Insurance Company; William A. Brewer, Jr., president of the said defendant the Washington Life Insurance Company; John E. Hegeman, secretary of the said defendant the Metropolitan Life Insurance Company; Jacob L. Halsey, vice-president of the said defendant the Manhattan Life Insurance Company, and E. B. Stoddard.

IX. That after the appointment of such a committee the defendants, for the purpose of defining their powers and duties, made and passed the following resolutions:

"Resolved, that the expense to be necessarily made in support of the ground of defense which is common to all the insuring companies, be borne by all the companies in the proportion of the claims against them respectively, the expense for supporting special defenses being left to be borne by the companies respectively which raise such defenses.

"Resolved, that the present committee be continued, and that in addition to being charged with the care of the defense which is common to all, they audit the expense therefor incurred by them and to be incurred by them, apportioning the same ratably among the companies, and call in the necessary contributions in installments as the same shall be required."

X. That the plaintiff had no knowledge in fact of said resolutions.

XI. That the plaintiff had knowledge of the persons constituting said committee.

*Horace G. Prindle*, in person, and *S. Hanford*, for the appellant.

*Foster & Thomson*, for the respondent.

Hardin, P. J.:

Defendant's answer admits that the plaintiff is and was an attorney, residing and having an office in Norwich, Chenango county, and engaged in the practice of his profession, and that the defendants mentioned in the pleadings in this action are corporations doing a life insurance business. It also admits "that each of the said

defendants had, prior to the month of November, 1878, issued a policy of insurance covering the life of one Walton Dwight, who died in the city of Binghamton, Broome county, in this State, on or about the 15th day of said month of November, 1878." In the plaintiff's complaint, it is alleged "that, after the death of said Dwight, the defendants combined to resist the enforcement of claims upon their said policies." The complaint alleges that in April, 1883, the defendants "retained and employed this plaintiff in his professional capacity to act as local counsel at Norwich aforesaid, the said county of Chenango being the county in which several suits on policies, in the defense of which said defendants were interested as aforesaid, were then pending." The complaint then avers that the plaintiff, under said retainer, and prior to the month of March, 1884, "rendered valuable professional services to said defendant in certain interlocutory proceedings before trial, and in aiding in the preparation for trial, and trial at Circuit    *    *    *    of one of the suits brought by the personal representatives of the said Walton Dwight, deceased, on one of said life policies,    *    *    *    being the first and only one of the said suits, for the defense of which the said defendants had entered into said combination as aforesaid, which was ever tried, and in proceedings subsequent to trial, such services necessarily occupying upwards of sixty days of plaintiff's time, to the exclusion of his other professional business. That the reasonable value of such services was the sum of twelve hundred dollars. That said plaintiff also rendered other services during said period under said retainer in connection with other suits against said defendants then pending." It also avers that he paid, laid out and expended moneys upon request.

Among other things alleged in the answer is a statement that " the insurance companies named as defendants in this action contributed together a fund to be used in payment for the obtaining of evidence, the payment of experts and for such other purposes as might be deemed desirable for their general and common interest, and appointed a committee consisting of Timothy H. Brosnan, who was at the time president of the United States Life Insurance Company, William A. Brewer, Jr., who was then president of the Washington Life Insurance Company, John R. Hegeman, who was then secretary of the Metropolitan Life Insurance Company, Jacob L. Halsey,

who was then vice-president of the Manhattan Life Insurance Company, and E. B. Stoddard, to disburse the said money which should be paid by each;" and then the answer contains an averment of a limited authority of the committee as to the expenditure of money. It also "admits and alleges that when sued by the representatives of said Dwight, upon policies issued by it upon his life, this defendant, upon its own responsibility and directly through its own counsel, in August, 1883, wrote to the plaintiff to prepare papers and apply to the court for an order putting the trial of the said case against it over the term;" also "this defendant wrote to plaintiff to prepare papers and apply to the court for an order to show cause why a commission should not issue to Pennsylvania to take the testimony in said case against it of certain witnesses residing there." The answer also alleges that "for the trouble entailed upon the plaintiff by reason of such correspondence defendant is willing to pay full and reasonable compensation."

The referee finds that the plaintiff was an attorney as alleged, and that the defendants are corporations substantially as alleged in the complaint, and that they had issued policies prior to November, 1878, substantially as alleged in the complaint; and that actions against each company on its policy were commenced on behalf of the personal representatives of said Dwight. The referee also finds "That the said defendants, after the death of said Dwight, united in resisting the claims made upon said policies." He also finds that a committee was appointed by the defendants for the purpose of carrying out their objects; and he also finds "That the plaintiff had no knowledge in fact of said resolutions," to wit, the resolutions passed by the defendants at the time they raised the committee. The referee also finds "That on May 24th and May 25th, 1883, plaintiff was present at a meeting in the city of New York of the counsel of the various companies;" and he further finds "That at said meeting there were present Halsey Fisk, attorney for the Homoeopathic Company, Joseph Larocque, attorney for the Germania Company, James Thomson, attorney for the Washington Company, Daniel Magone and Timothy H. Brosnan, president of the United States Company, and others, and the subject-matter of the said actions so brought against the defendants were discussed by and between those present, and the employment

of plaintiff as local counsel at Norwich aforesaid was then and there talked over, and his opinion asked relative to the various defenses in said actions and the trial thereof, and plaintiff was at that time paid by said Brosnan the sum of $150 as a retainer fee as such counsel, and all services performed by plaintiff as such counsel were performed under such retainer." The referee also finds "That the reasonable value of such services was the sum of twelve hundred dollars. That said plaintiff also rendered other services during said period, under said retainer, in connection with other suits against said defendants then pending;" that in January, 1884, the plaintiff rendered a bill to Timothy H. Brosnan, chairman, etc., for the balance due for services in the Dwight insurance cases.

Plaintiff was sworn as a witness in his own behalf, and detailed the services performed by him at the instance of the defendants in and about the litigation; he stated the value of such services after having given the details thereof, and that he was requested to visit the city of New York, and that he attended a meeting held in the office of the defendant, the United States Life Insurance Company, in the month of May, 1883; he says, " There were present Mr. Magone; he acted as counsel for the various companies in this combination. Mr. Brosnan was there. He was the president of the United States Company. I remember Mr. Thomson being there as the representative of the Washington Life, the attorney for that company. I think Mr. Brewer was also there, William A. Brewer, Jr. Mr. Larocque was also there as the attorney and representative of the Germania Life Insurance Company. Halsey Fisk, the attorney for the Homœopathic and Metropolitan companies was also there." It appears that in that interview a general discussion took place in respect to the " defenses set up and the evidence to be obtained to maintain them," and generally as to the fact that the plaintiff was to act as " local counsel; " and the witness adds, " The whole thing was talked over there. We consulted generally about the points involved, the proof that could be obtained and the probable result." And the plaintiff produced some correspondence that took place between him and the counsel engaged in the defense, and gave an account of the circumstances attending the trial of the Germania case at the Chenango Circuit. He says: " The trial occupied thirty

days, and I was occupied and worked night and day up to twelve o'clock at night. Thomson was up here as attorney for the Washington Life till near the close of the trial. The committee hired the Marquis dwelling here and had their cooks from New York, and all the et cetera, and lived high, and I met them there every evening for consultation upon the case. I had conferences with Mr. Thomson. I looked up decisions here and took them over from my office to the Marquis house, books, etc. I might say here, while I think of it, that before the trial came off, not knowing exactly what I was to do on the trial, I examined all the questions of law and made a brief, so as to be ready in any emergency." After this testimony was given the plaintiff was cross-examined at great length and his case was rested. No motion was made for a nonsuit. The defendant called as a witness Mr. James Thomson, who gave his recollections as to the progress of the litigation, the action of the committee, the adoption of the resolutions referred to in the answer of the defendant, and at the close of his testimony the case was rested, no motion having been made for a nonsuit. Exceptions were taken to certain refusals of the referee to find and to the findings made, of fact, as well as of law. Apparently the referee has disposed of the case upon the rule applicable to an executory contract; that the defendants received the professional services of the plaintiff after they had made a common defense of all the actions brought against them, is made apparent by the evidence. It is also made apparent by the evidence that the facts and circumstances disclosed to the plaintiff, and known to him prior to performing the services, were such as to warrant him in the belief that the defendants desired his services as local counsel, and that that desire was communicated to him by persons who assumed to act in behalf of the defendants. That the defendants had knowledge of the services performed by the plaintiff in behalf of the position taken by the defendants against the right of the representatives of Walton Dwight to recover is quite apparent from the testimony delivered before the referee. It is also quite apparent that the plaintiff did not know of the special provisions relating to the committee that was raised by the defendants, and that the circumstances brought to his knowledge were sufficient to warrant him in the belief that the defendants had made an arrangement to defend any and all

of the actions pending when his services were solicited. When the proceedings preliminary to the trial took place, when the trial took place, and in short when the plaintiff's services were rendered, the defendants must have known that the plaintiff was acting in their behalf for the purpose of furthering their common purpose of making a defense to all the actions. Under such circumstances, it seems reasonable that the rule should be so construed as to give the plaintiff a right of action. (*Hooker* v. *Eagle Bank of Rochester*, 30 N. Y. 86.) This action, like *Fister* v. *LaRue* (15 Barb. 323), was brought upon an executed contract, and in that case it was said by JOHNSON, J.: "It is well settled, at least in this country, that where a person is employed for a corporation, by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services according to the agreement. Having availed itself of the services and received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract. (Ang. & Ames on Corp. 216, 218, chap. 8, § 8.) Where the contract is still executory, and nothing has been done under it, and the action is to recover damages merely for non-performance, it is for the plaintiff to show a legal contract binding upon the corporation. But this is not that case. The services here have all been rendered in pursuance of the agreement, with the assent, or, at least, without notice to the plaintiff of the dissent of the other trustees, and it would be intolerable now to deprive her of her compensation. The law raises the same presumptions against corporations in such cases as against natural persons."

In *Steam Navigation Co.* v. *Weed* (17 Barb. 378) it was held that, "A party who has had the benefit of the contract cannot be permitted, in an action founded upon it, to question its validity."

In *Cunningham* v. *M. S. & F. C. R. R. Co.* (63 Hun, 441) it is said: "A corporation may become bound by a contract, express or implied, under the same circumstances as an individual. To make a corporation liable it is not necessary to show an express resolution passed at a meeting of its directors. Where a party does work or

furnishes materials to a corporation under a contract with one assuming to act as its agent, to the knowledge of its officers, without dissent on the part of the corporation, it will be held to have ratified the contract, and to be liable thereunder." The proposition is supported by numerous authorities cited. When the interview took place in the city of New York with the plaintiff it was in the presence of a representative of the respondent here, and it comes with ill grace from it to insist that after his services were arranged for and the arrangement approved by its representative, that the services should not be paid for by the parties soliciting them. At that interview there were persons present who had authority from all the defendants to aid in the defense of all the actions that were commenced by the representatives of Dwight. As the referee has found, an arrangement had been made by all the defendants to make a defense of all of the actions, and it is apparent that counsel who represented all the defendants took part in the interview had with the plaintiff; and it is further apparent that when the trial took place, persons who represented all the defendants in this action were present, and all the defendants had knowledge of the services being performed, and performed by the plaintiff under the supposition that he had been employed in behalf of all the defendants, and that his services would inure to the benefit of all the defendants here, to wit, the associated fourteen companies which had agreed to make a common cause of a defense against all the claims made by the representatives of the Dwight estate. The facts indicate very clearly, as the referee has found, "that the plaintiff had no knowledge in fact of the resolutions" which were adopted when the committee was appointed to further the defense. The referee, upon evidence which warranted the finding, states that plaintiff's services so performed were "done for all the codefendants." Inasmuch as we are of the opinion that the plaintiff's right of recovery rests upon an employment made by persons assuming to act for and on behalf of the defendants, and that the services were rendered and received by the defendants without any knowledge on the part of the plaintiff of the resolutions which had been adopted by the companies, his right of recovery is upon the joint undertaking of the defendants and not upon their several undertaking; therefore, the case of Ludlow v. McCrea (1 Wend. 228) is not applicable. Respond-

ent relies largely upon *Adriatic Fire Ins. Co.* v. *Treadwell* (108 U. S. 364, 367). That case is unlike the one before us. In that case it appeared that after the insurance companies had formed an agreement to make a defense "the committee named in it employed the defendant in error on behalf of all the companies parties to it. He testified that the agreement was shown to him, and that he accepted the invitation to become the attorney of the companies. The employment was general, no specific terms being fixed, and it is not questioned that it was *with full knowledge of the agreement between the companies, and according to the authority conferred by it upon the committee.*" That case was disposed of by the court "on the ground that no joint liability has been proven." While in the case before us we are disposed to rest the plaintiff's right of recovery upon the general principle that where persons, either officers in fact or agents, assume to act in behalf of a corporation, employ a person to perform a service for the corporation, and it is performed with a knowledge of the directors and principal officers of the corporation, and such corporation receives the benefit of such service without objection, the corporation is liable under an implied assumpsit. (*Hooker* v. *Eagle Bank of Rochester*, 30 N. Y. 86.) We are not willing to assent, upon the findings made by the referee and the evidence found in the appeal book, to his conclusion of law, "That evidence of refusal to make a proper assessment, under the resolutions, is a condition precedent to the plaintiff's recovery from the Washington Life Insurance Company, or any other liability incurred by it under such resolution," nor to his conclusion that the respondent "is entitled to judgment in this action dismissing plaintiff's complaint, with costs." The foregoing views lead us to order a new trial.

MARTIN, J., concurred.

MERWIN, J. (dissenting):

I am not prepared to concur in the opinion of the presiding justice. The retainer under which plaintiff claims was by the committee, and he is, I think, chargeable with notice of the extent of their powers. (*Martin* v. *Farnsworth*, 49 N. Y. 558.) He knew that the interest of the different companies in the litigation was not

equal.  If the respondent knew afterwards that plaintiff performed services for the common benefit, it had a right to believe that he was doing it under such authority as the committee had a right to give, and under the arrangement for payment as provided for when the committee was appointed.  That being so, the authorities as to implied ratification would not apply.  The arrangement between the companies did not authorize a joint liability.  (*Adriatic Ins. Co.* v. *Treadwell*, 108 U. S. 361.)  The plaintiff had a right to be paid, but not on the basis of a joint liability.  The respondent was not, I think, liable for the whole.  I, therefore, dissent.

Judgment reversed on law and facts and a new trial ordered, with costs to abide the event.