## DAVIES v. HARVEY STEEL CO.

(Supreme Court, Appellate Division, Second Department.   June 9, 1896.)

CORPORATIONS—CONTRACTS—EVIDENCE.

The employment of plaintiff by defendant corporation is sufficiently shown by evidence that defendant's president, ostensibly acting for defendant, employed plaintiff, that plaintiff immediately entered on his duties with samples of goods furnished by defendant, that the fact of the hiring of plaintiff was known to defendant, and that defendant received the benefit of plaintiff's services.

Appeal from circuit court, Kings county.

Action by James R. Davies against the Harvey Steel Company, to recover the sum of $10,000, alleged to be due plaintiff from defendant for services rendered under a contract of employment. From a judgment for $10,063.75, entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals.   Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Wilson & Wallis, for appellant.

Hess, Townsend & McClelland, for respondent.

PRATT, J.   This is an appeal from a judgment in favor of the plaintiff entered upon a verdict of a jury and from an order denying defendant's motion for a new trial.   The complaint alleges the incorporation of the defendant in the state of New Jersey in 1886, and that, prior to October 1, 1890, the plaintiff, at the request of the defendant, rendered work, labor, and services, and paid out money for its benefit to the amount of $10,000, which defendant has failed to pay.   The answer put in issue the employment and the services and disbursements.   On the point of employment the jury found for the plaintiff, under a charge as follows:

"It is not enough that he [the plaintiff] was employed by Mr. Harvey, who happened to be president of the company; but, that he may recover against the company, you must find that the employment was by the company itself, and that the services were rendered for the company itself. * * * So you are to take all these things introduced here, and say whether this is an employment, if there was one, by Mr. Harvey individually, or whether he was doing this thing for the company, and whether he had the power to do it for the company."

The only question, therefore, for us, upon this part of the case, is whether there was competent evidence to sustain that finding of the jury.   We think the evidence was ample for that purpose. That a contract was made, early in 1890, at the plaintiff's office, by Mr. Harvey, the president of the defendant, ostensibly for the defendant, was satisfactorily proved.   Almost immediately thereafter the plaintiff entered upon his duties by starting for Washington, where the services were to be rendered, equipped with various samples of steel furnished by defendant.   The fact that some of the officers of the naval department had heard of Harveyized steel before this time is not material.   The plaintiff was employed to induce them to use and adopt it as a plating for ships of war.

The fact that the hiring of the plaintiff was known to the defendant was abundantly proved, and also that it was approved, and that the defendant received the benefit of the services rendered. It is plain that the business upon which the plaintiff was employed was that of the defendant, the process was owned by it, and the contracts secured from the government were made with it.

The point, so strenuously urged by the defendant, that plaintiff's services were to be confined to what is called "tool steel," because the patent process which the government contracted for was not issued until after the plaintiff's services, has no foundation. The evidence was that plaintiff took a sample piece of plate to Washington in the first instance, and his first interview with the officers there was upon the subject of plating for ships. Even as early as 1888, Commodore Folger, in an interview, as he testifies, with Mr. Harvey, stated:

"He largely explained his process and we discussed its nature. I asked him if his process could be applied to steel in large masses, having the idea it might be applied to the manufacture for armor."

So the process was known as early as 1888 by defendant.

It is to be noted that plaintiff knew only what Harvey told him about the process or the patents; but that the defendant knew all about that subject, and employed the plaintiff to go to Washington and negotiate for a trial of its steel for armor, which was followed by the building of a plant for the making of the steel in Washington, is beyond doubt. In fact, all the interviews with officers in the navy department had reference to armor plates, and even the first interview with Harvey in presence of Calkin had reference to this subject; and that defendant knew all about the matter is proved, not only by the correspondence while plaintiff was in Washington, but by personal interviews between plaintiff and members of the board of directors. It is unnecessary to refer to the various items of evidence contained in the case, for we are satisfied that there is sufficient proof to support the verdict.

The defendant makes a point that plaintiff did not procure the contract. On September 30, 1890, Mr. Harvey writes to plaintiff as follows (plaintiff's Exhibit 4):

"From some information which I have received, which I am under obligation not to reveal, nor can I explain at present to you, I am under necessity to ask you to withdraw for the time being from representing us before the government. I hope you will not receive this as a personal matter from me, but as emanating from our company as a matter of policy. I hope to be able after a short time to explain to you, and if matters are satisfactory in Washington, we will again renew our joint efforts."

This letter not only shows an employment in behalf of the defendant, but that, up to that time, the service had been satisfactory. The plaintiff was at work under a special contract for a specified sum, to wit, 10 per cent., and at that time, as the jury has found, performed it upon his part.

As to exceptions of defendant, the first to be noticed is to proof of conversation when plaintiff was employed. It showed the subject-matter of the contract, and the contract itself, and was a dec-

laration of the president and general manager of the company. The next exception is to proof of conversations in Washington with officials of the navy department. That evidence was competent, as showing what the plaintiff did to carry out his agreement. As to proof of conversations and correspondence, the exceptions have no merit, as there was proof from which the jury might infer that Harvey had authority from the company to do what he did, and that his acts were approved and ratified by the defendant.

The law of the case was correctly laid down to the jury in the charge of the judge. The general rule is that an agreement by an officer or agent of a corporation who assumes to act in its behalf can be enforced against the corporation where it has received the benefit of the agreement. Patterson v. Robinson, 116 N. Y. 193, 22 N. E. 372; Cunningham v. Railroad Co., 63 Hun, 439, 18 N. Y. Supp. 600. The president of a corporation has prima facie power to do any act which the board of directors could authorize or ratify. Prindle v. Insurance Co., 73 Hun, 448, 26 N. Y. Supp. 474. 2 Spell. Priv. Corp. p. 832, states, in speaking of executed contracts made without expressed authority by an agent of a corporation:

"The consent of the corporation thereto will be presumed, for, when a person has received and appropriated the fruits of a transaction done in his name and under apparent authority from him, he thereby furnishes the highest possible evidence of his approval."

There are no other exceptions that require notice.

The judgment and order should be affirmed, with costs. All concur.