MICHIGAN CENTRAL RAILROAD CO. v. CHICAGO, KALAMAZOO & SAGINAW RAILWAY CO.

1. CORPORATIONS—CONTRACTS—RAILROADS—USE OF SIDE TRACK —NOTICE.
   Where the president of a paper company, without authority from the board of directors, executed a contract with a railroad company for the rebuilding and use of a side track to the paper mill, the occupancy and use of such side track by the railroad for one year gave the paper company constructive notice of the terms of the contract.

2. SAME—RATIFICATION.
   Where a paper company accepted the benefits of a contract of which it had constructive notice, but which it did not authorize its president to make, it will be presumed to have ratified the act of its president in making it.

3. SAME—STATUTE OF FRAUDS—PERFORMANCE.
   Where, in reliance upon a contract executed by the president of a paper company, a railroad company has rebuilt a side track to the paper mill, and used such track for one year, there is such a performance of the contract as will, in equity, take it out of the operation of the statute of frauds, and neither the authority of the president nor a ratification of his act need be in writing.

4. SAME—NOTICE—GRANTEE.
   A grantee of such paper company, having knowledge of the side track and its location and ownership, is charged with

constructive notice of the railroad's rights under the contract.

5. CONTRACTS—SIDE-TRACK AGREEMENT—MUTUALITY—RIGHT TO TERMINATE.
    A contract giving a railroad company the right to maintain and operate a side track "for and during such time as the business is carried on for the accommodation of which said side track is constructed" is not void for want of mutuality because it gives the railroad "the right to remove said track whenever, in its judgment, said business is not sufficient to justify it."

6. SAME—VALID AND INVALID PROVISIONS.
    A harsh and inequitable provision in a side-track agreement, to the effect that the mill owner should assume all risk of damage to persons or property by reason of the use of the track, is no answer to an attempt to enforce other and valid provisions of the contract.

Appeal from Kalamazoo; Adams, J. Submitted January 9, 1903. (Docket No. 19.) Decided March 5, 1903.

Bill by the Michigan Central Railroad Company against the Chicago, Kalamazoo & Saginaw Railway Company and the Kalamazoo Paper Company to enjoin interference with certain side tracks. From a decree dismissing the bill, complainant appeals. Reversed.

*N. H. Stewart* (*Ashley Pond* and *Henry Russel*, of counsel), for complainant.

*Howard & Howard*, for defendants.

CARPENTER, J. Complainant appeals from a decree of the circuit court for the county of Kalamazoo, in chancery, dismissing a bill of complaint in which it seeks an injunction to prevent defendants violating rights which it claims by virtue of the following contract:

"This agreement, made this fourteenth day of April, A. D. 1898, between the Wolverine Paper Company, hereinafter, for convenience, called the 'first party,' and the Michigan Central Railroad Company, hereinafter called the 'second party,' witnesses:

"*Whereas*, the first party has requested the second party to construct and lay a side track one and one-half miles east of Kalamazoo station, to be connected with a side track of the second party, on the south side thereof, extending southeasterly from the point of connection with the main track of the second party eight hundred (800) feet, of which thirty (30) feet will be laid on land of the second party and about 770 feet on land owned or occupied and controlled by the first party, substantially as shown on the plan hereto attached and made a part hereof; and

"*Whereas*, the second party has consented and does hereby consent to construct said side track as requested by first party, upon the terms and conditions hereinafter mentioned, and to which the first party hereby assents and agrees to perform, as follows, viz.:

"The first party hereby grants to the second party the right to construct, maintain, and operate said side track, substantially as shown on the plan hereto attached and made a part hereof, upon the land owned or occupied and controlled by the first party as aforesaid, for and during such time as the business is carried on for the accommodation of which said side track is constructed.

"The ownership of said track shall be vested in the second party, and it shall have the right to use, without cost or charge therefor, the whole or any part of said track, for other business than that of the first party, when the same is not actually occupied by cars which are being loaded or unloaded by the first party; and the second party shall have the right to take up and remove said track and appurtenances from said premises whenever the business of the first party, for the accommodation of which the same is laid, shall be discontinued, or whenever, in its judgment, such business shall not be sufficient to justify it in maintaining said side track.

"That the second party will maintain said side track at its own expense, except that, in case the freight which the first party shall receive at or forward from said side track over lines of railroad owned or operated by the second party shall amount, during each year from the date hereof, to less than one car load for each foot of said track laid on land owned or controlled by the first party, as aforesaid, exclusive of cars that may be handled by the second party in the way of switching and in connection with shipments over other railroads, the second party shall bear only such

proportion of the annual cost of maintenance of the part of said track laid upon land owned or controlled by the first party as the number of cars of freight, as aforesaid, bear to the number of feet of track laid upon land owned or controlled by the first party; and the first party shall pay the second party the balance of said annual cost.

"The first party shall not erect any structure, temporary or otherwise, over or above said track, at a lower level than twenty-two feet above the track rails, nor nearer to the sides of the rails than five feet, without the consent of the second party in writing; shall not permit any other railroad company to connect its track with the side track so constructed; shall exercise the greatest care in the use of said track, to prevent cars or other obstructions from getting out upon or too close to the main or other tracks of the second party; shall secure the safe closing and locking of all switches on land of first party, and use such means and care as will tend to avoid accidents of any kind; shall pay and indemnify the second party for all damage to cars or contents by fire originating upon the premises of the first party, and which shall not be caused by the engines or servants of the second party, while such cars and contents are upon said track for the use of or in connection with any business of or for the first party; and shall and hereby does assume all risk and liability for all loss, injury, or damage to property or persons, other than the property of the second party (except to cars and contents as hereinbefore provided), and other than persons in the employ of the second party, that may occur or be caused at any time by reason of the use of said side track, or by the men, engines, cars, or other means and agencies employed by the second party in the use of the same, in connection with any business of or for the first party, whether the same be caused by negligence or otherwise. That the first party shall, at equal rates, give the second party the preference, and as long a haul as possible, on all competitive traffic to and from said side track.

"In testimony whereof, the parties hereto have caused these presents to be executed in triplicate, the day and year first above written.

        "Wolverine Paper Co.,
           "By C. N. Chase, President.
      "M. C. R. R. Co.,
           "By R. H. L'Hommedieu."

When this contract was made, complainant owned and maintained a side track to the mill and on the premises of the Wolverine Paper Company. It was contemplated by the parties that the side track contracted for should be constructed by making changes in the one already existing. Accordingly, complainant made these changes, and said side track was used, as agreed in said contract, until a short time before this suit was commenced.

On or about April 14, 1899, said Wolverine Paper Company sold its plant and part of its personal property to the Kalamazoo Paper Company, one of the defendants in this suit. In the fall of 1900, defendant the Kalamazoo Paper Company, desiring to have part of its freight carried by its codefendant, the Chicago, Kalamazoo & Saginaw Railway Company, requested complainant to remove its track from the south side of the mill, and let the defendant railway operate from that quarter, or to enter into an arrangement by which the two railroad companies should occupy and operate complainant's tracks jointly; and threatened, in case of refusal, to tear up and throw out said tracks, and let defendant railway in. At the time this threat was made, both defendants were taking action indicating a purpose to carry it into execution. Thereupon this suit was commenced for the purpose of securing an injunction preventing such proposed action. A decree was made in the court below dismissing the bill, and enjoining the complainant from interfering with the proposed action of defendants, unless it signified in writing an acceptance of the proposition from the defendant railway company to sell one-half its side track at actual cost, and use the same in common.

The only questions presented in this case relate to the validity and construction of the written contract heretofore quoted. Defendants urge:

(1) That the contract in question is invalid, because executed only by the president of a corporation, who had no authority from its board of directors.

(2) That the contract, even though binding upon the

Wolverine Paper Company, is not binding upon its grantee, the Kalamazoo Paper Company, defendant in this suit.

(3) That the contract is void on its face for lack of mutuality.

(4) That the contract is not such an instrument as a court of equity will enforce.

Let us consider each of these objections separately.

1. Is the contract void because executed by the president, without authority from the board of directors, of the Wolverine Paper Company? For the purposes of this opinion, it may be conceded that the president had, by virtue of his office, no authority to execute this contract, and that the board of directors never authorized, nor by resolution ratified, his action. It appears, however, that immediately after its execution the contract was performed by complainant, and that the Wolverine Paper Company enjoyed its benefit for about a year, and until the sale of its mill to the Kalamazoo Paper Company, defendant in this suit. Complainant's occupancy and use of its track gave the Wolverine Paper Company constructive notice of the terms of its contract. *Detroit, etc., R. Co.* v. *Brown,* 37 Mich. 533. Having accepted the benefits of this contract, of which it had constructive notice, the corporation may be presumed to have authorized or ratified the act of its agent in executing it. *Davies* v. *Steel Co.,* 6 App. Div. 166 (39 N. Y. Supp. 791); *Pittsburgh, etc., R. Co.* v. *Bridge Co.,* 131 U. S. 371 (9 Sup. Ct. 770); *Jacksonville, etc., R. Co.* v. *Hooper,* 160 U. S. 514 (16 Sup. Ct. 379); *Scott* v. *Railroad Co.,* 86 N. Y. 200; 2 Cook, Corp. § 716. The decisions of this court which hold that, by reason of the statute of frauds, such authority or ratification must be evidenced by a writing, have no application, for here there was such a performance of the contract as to take it, in equity, at least, out of the operation of the statute; and, this being a suit in equity, the equitable rights of the complainant will be protected.

2. Was the contract binding upon the Kalamazoo Paper

Company, defendant herein? According to the contract, the right was granted to complainant—

"To construct, maintain, and operate said side track, substantially as shown on the plan hereto attached and made a part hereof, upon the land owned or occupied and controlled by the first party as aforesaid, for and during such time as the business is carried on for the accommodation of which said side track is constructed."

It is urged that the business referred to is the business carried on by the Wolverine Paper Company, though it appears that the defendant the Kalamazoo Paper Company carries on substantially the same business in the same place, and, until a short time before this suit was commenced, had the benefit of the use of the side track under consideration. It is sufficient to say of this contention that we are pointed to and can find nothing in the contract supporting it. The business referred to is the business carried on at the plant in question. It is insisted that this contract is not binding upon defendant the Kalamazoo Paper Company, because it had no notice of the same until after it had made its purchase from the Wolverine Paper Company, and until a short time before this suit was commenced. It was, however, chargeable with notice, and did know, of the existence, location, and ownership of these tracks. It was bound to infer, from this knowledge, some arrangement between the complainant and its own grantor. If it wished to know what that arrangement was, it had only to inquire, and obtain that knowledge. Clearly, the facts were such as to charge defendant with constructive notice of complainant's rights. *Detroit, etc., R. Co.* v. *Brown*, 37 Mich. 533. Nor is there, as defendant contends, anything in the case of *Pontiac, etc., R. Co.* v. *Reed*, 130 Mich. 661 (90 N. W. 658), inconsistent with these views. Indeed, that case proceeded upon the theory that the contract made by his grantor bound defendant.

3. Is the contract void for lack of mutuality? The contract gives complainant—

" The right to take up and remove said track and appurtenances from said premises whenever the business of the first party, for the accommodation of which the same is laid, shall be discontinued, or whenever, in its judgment, such business shall not be sufficient to justify it in maintaining said side track."

It is urged that, because complainant is given the right to determine, under certain conditions, when its track shall be removed, the contract is so lacking in mutuality as not to bind the defendant. Defendants rely upon *Davie* v. *Mining Co.*, 93 Mich. 491 (53 N. W. 625, 24 L. R. A. 357), and other like cases, which hold that the courts will not enforce, nor permit damages to be awarded for the breach of, executory contracts which may be terminated at the will of one of the parties. These cases are clearly distinguishable from the case at bar. The proposition that one has no right to damages for the nonperformance of an executory contract which he may terminate at pleasure is entirely different from the proposition that he has no rights whatever in an estate terminable at his will, and which he has acquired by the expenditure of a large amount of money. By the contract under consideration, complainant acquired an easement. *Taylor* v. *Navigation Co.*, 105 N. C. 484 (10 S. E. 897). After its execution the agreement was no more void for lack of mutuality than is a lease for a definite term, terminable at the option of the tenant. It was clearly the intention of the contract to grant complainant the right to maintain and operate its track "for and during such time as the business is carried on for the accommodation of which said side track is constructed," with "the right to remove said track whenever, in its judgment, said business is not sufficient to justify" its maintenance; and this intention should be given effect, unless it contravenes some principle of law. We can discover no such principle. The case of *Pontiac, etc., R. Co.* v. *Reed*, 130 Mich. 661 (90 N. W. 658), is not in point. The contract there did not, as does the contract here, grant to the railroad company the

right to maintain and operate its track "during such time as the business is carried on for the accommodation of which said side track is constructed;" but it did contain an express provision giving the railroad company the right to remove the track after three years, and it was held that the proper construction permitted the maintenance of the side track as long as the owner "should desire, and no longer; subject, however, to the right of the company to remove after the expiration of three years."

4. It is insisted that there are some provisions in this contract so harsh and inequitable that the contract should not be enforced. As an instance of these provisions, reference is made to the clause in the contract whereby the paper company assumes all risk and liability for loss, injury, or damage to property or persons, other than the property of complainant and persons in its employ, caused by reason of the use of said track. We are not called upon in this case to enforce, or even to uphold the validity of, this provision. Its invalidity affords no answer to the attempt to enforce other, and, in our judgment, valid, provisions of the contract.

The decree of the court below is reversed, and one entered here for complainant in accordance with the prayer of its bill. Complainant will recover costs of both courts.

The other Justices concurred.