SMITH–POWERS LOGGING CO. et al. v. BERNITT et al.*

(Circuit Court of Appeals, Ninth Circuit. December 4, 1916.)

No. 2591.

1. FRAUDS, STATUTE OF ⬳139(4)—ORAL AGREEMENT FOR INTEREST IN LAND —EFFECT OF PERFORMANCE.

An oral agreement creating an interest in land, which has been carried into effect by the acts of the parties, is not affected by the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 338, 339; Dec. Dig. ⬳139(4).]

2. LOGS AND LOGGING ⬳15(1)—PAROL CONTRACT FOR CONSTRUCTION AND OPERATION OF BOOM—VALIDITY.

Under an oral agreement with a partnership which owned tidelands, complainants' predecessors in interest, constructed and operated log booms in the land as a joint adventure, the cost, expenses, and profits being shared equally between them and the partnership. This continued for a number of years, during which there were changes in the partnership, a lumber company being formed, which took title to the land, and also transfers of interest by some of the other parties to the agreement; but by common consent the booms continued to be operated under the agreement. Subsequently defendants purchased the property of the lumber company. At that time the booms were being operated by complainants and were full of logs. The books of the vendor also showed the accounts with the booms, with charges and earnings. Held, that the agreement was valid, and that defendants took with notice of complainants' rights and subject thereto.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 40, 41; Dec. Dig. ⬳15(1).]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by E. W. Bernitt and Victor Wittick against the Smith-Powers Logging Company and the C. A. Smith Lumber & Manufacturing Company. Decree for complainants, and defendants appeal. Affirmed.

For opinion below, see 213 Fed. 378.

The appellees brought a suit in the court below to recover certain moneys alleged to be due them for an interest in a boom, and for boomage and rafting of logs and piles, under a partnership agreement with the predecessors in interest of the appellants. The facts in the case, as found by the court below, are in substance the following: In 1882 Dean, Wilcox, and Merchant were partners, doing business under the firm name of E. B. Dean & Co. They entered into an oral agreement with Bernitt, Klahn, Wulff, and Young, whereby the parties to the agreement were to construct and operate upon tidelands owned and controlled by E. B. Dean & Co. in the channel of Coos river log booms and dolphins for the purpose of catching and storing logs and piles and making up rafts for transportation in Coos Bay. Dean & Co. were to receive one-half of the boomage charges, and the other parties were to receive each one-eighth thereof, and in that proportion all parties were bound to contribute to the maintenance of the booms. Bernitt, Klahn, Wulff, and Young were to capture the logs as they came down the river and assemble them in the booms, for which they were to receive 25 cents per thousand, log measure, one-half of which was to be paid to Dean & Co.; but Bernitt, Klahn, Wulff, and Young were privileged to put logs in rafts and transport them to the mills about the bay, in the charges for which Dean & Co. were to have

no share. The booms were constructed at a considerable expense, of which Dean & Co. contributed one half, and Bernitt, Klahn, Wulff, and Young the other half. Dean & Co. was dissolved by the death of Wilcox, and thereafter the Dean Lumber Company, a corporation, became the owner of the partnership property. But later the property passed to C. A. Smith, and from him to the C. A. Smith Lumber & Manufacturing Company, and subsequently to the Smith-Powers Logging Company; C. A. Smith being the principal stockholder in the C. A. Smith Lumber & Manufacturing Company, and that company being the principal stockholder in the Smith-Powers Logging Company. Bernitt and Wittick succeeded to the original interests of Bernitt, Klahn, Wulff, and Young.

It was one of the contentions of the appellants that, Dean & Co. having been dissolved by the death of Wilcox, the original partnership agreement between that firm and Bernitt and his associates was likewise dissolved; but the court found from the record that all the successors in interest to Dean & Co. recognized the agreement and treated with Bernitt and his associates and successors strictly according to the terms thereof, and that the appellants cannot now controvert the appellees' interest in the booms. The court further found that for the season of 1908–1909 the appellants permitted the use of the boom by the appellees, but refused to recognize their right to compensation under the old agreement, and that in June, 1909, the appellants wholly ousted the appellees from the use and occupation of the property, and that by ousting the appellees, and appropriating their interests in the booms, the appellants rendered themselves liable to the appellees for that interest. The court found the value of the booms to be $2,000, and the value of the appellees' interest therein to be $1,000, and that the appellees were entitled to an accounting from June, 1909, of boom charges on logs caught in the boom, and also found that the charges so payable by the appellants to the appellees, after allowing all proper credits, was the sum of $2,667.34. For those sums judgment was entered for the appellees.

John D. Goss and Herbert S. Murphy, both of Marshfield, Or., for appellants.

W. U. Douglas and John F. Hall, both of Marshfield, Or., and Watson & Beekman, of Portland, Or., for appellees.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants rely upon the statute of frauds, and contend that that statute applies to a boom and the tidelands on which it is constructed, and that, since the tidelands belonged to E. B. Dean & Co., the predecessors in interest of the appellees could acquire no interest therein, except by a conveyance in writing. But the statute of frauds does not affect the rights of the parties under the circumstances which are shown by the evidence in this case. "Where an oral contract, which is unenforceable by reason of the statute of frauds, has been entirely performed, the rights of the parties are no longer affected by the statute, and it is immaterial that either party might have refused to perform. Where oral agreements creating interests in land have been carried into effect by the acts of the parties, the rights acquired thereunder are not affected by the statute." 20 Cyc. 302, 303; White v. Cleaver, 75 Mich. 17, 42 N. W. 530; Knecht v. Mitchell, 67 Ill. 86; Anderson v. Simpson, 21 Iowa, 399; Newman v. Nellis, 97 N. Y. 285; Brown v. Bailey, 159 Pa. 121, 28 Atl. 245; C. C. C. & St. L. Ry. Co. v. Wood, 189 Ill. 352, 59 N. E. 619; Anderson

School Tp. v. Milroy Lodge, 130 Ind. 108, 29 N. E. 411, 30 Am. St. Rep. 206; Mich. Cent. R. Co. v. Chicago, etc., R. Co., 132 Mich. 324, 93 N. W. 882.

[2] The appellants contend that the testimony fails to show any partnership between the copartnership of E. B. Dean & Co. and the predecessors in interest of the appellees. The evidence, however, shows clearly that the original agreement was that of a joint venture. The final situation was complicated by the changes that subsequently occurred, such as the retirement of Young and Klahn. But through all the changes the business continued to be operated as before, without any objection upon the part of Dean & Co. or any one. From the conduct of the parties, the court below was clearly justified in holding that there was consent to the changes in membership by the concurrence of all the parties, evidenced by their conduct. It is well settled that, with such concurrence, the purchaser of an interest may become a partner with the consent of all the parties, either expressed, or implied from their conduct. 30 Cyc. 605; Meaher v. Cox, 37 Ala. 201; Rosenstiel v. Gray, 112 Ill. 282; Harvey v. Ford, 83 Mich. 506, 47 N. W. 242. But it is not important to inquire how long the partnership continued to exist. The important fact is that the predecessors in interest of the appellees were induced by E. B. Dean & Co. to enter upon lands which the latter owned and to contribute one-half the expense of constructing booms thereon, with the understanding that all parties were to have a joint interest in them, and that the booms were operated under that understanding until the appellees were ousted.

It is contended that the court below erred in finding upon the evidence that the Dean Lumber Company and the appellants recognized the appellees' rights and acted under the partnership agreement. We have carefully considered the testimony which bears upon this contention, and, although the evidence is conflicting, we find no ground to disturb the conclusion of the court below. It is clearly established that, after the Dean Lumber Company acquired its interest, the appellees continued in the possession and management of the booms, and that they continued as before to receive the profits, and shared with the Dean Lumber Company the expenses of the maintenance of the booms. Squire, who was bookkeeper for the Dean Lumber Company from 1903, until he became manager of the company in 1905, who was called as a witness for the appellants, testified that he learned from Bernitt that he and his partners had built the boom under an agreement that they were to have the exclusive use of the same, and he testified that agreement was made at the time when the boom was first built, and continued "during the time I had anything to do with it."

The appellants contend that, even if there were a copartnership agreement, as found by the court below, the sale to C. A. Smith, a bona fide purchaser, passed the title of all parties. C. A. Smith purchased the property in February, 1907. He was a man of experience in the sawmill and logging business. He had an understanding with Powers, who became the president of the Smith-Powers

Company, that the property when purchased should be turned over to a logging corporation which they would organize. The time of the purchase was the middle of the logging season, the booms were full of logs, and the appellees were busily engaged catching and rafting the same. Their raftsmen had scows there in which they lived. Entries were at that time being made upon the books of the Dean Lumber Company, showing the charges and earnings of that company arising out of the operations of the appellees. The evidence is that the Smith-Powers Logging Company is controlled by C. A. Smith, who holds a large majority of the stock, and that Powers is the president thereof. Bernitt testified that in July, 1907, Powers told him that Smith wanted him (Powers) to purchase the boom property, but that he would have nothing to do with it so long as Bernitt and Wittick had an interest in it. There is other evidence tending to show that Smith had actual notice of the appellees' rights. But, aside from any actual notice that he may have had, the possession of the appellees was sufficient to put him upon inquiry to ascertain their rights. Randall v. Lingwall, 43 Or. 383, 73 Pac. 1; McDougal v. Lame, 39 Or. 212, 64 Pac. 864; Jennings v. Lentz, 50 Or. 483, 93 Pac. 327; Cantwell v. Barker, 62 Or. 12, 124 Pac. 264.

It is said there is nothing in the record to justify the fixing of June, 1909, as the date when the appellees were ousted. The complaint alleges that the ouster was in June, 1909, and the answer does not deny it. The testimony is that, during the rafting season of the fall, winter, and spring of 1908 and 1909, the appellees continued to catch logs in the booms as formerly, and to make up rafts and tow them to the mills, and that thereafter they were not allowed to do so. This sufficiently establishes the time of the ouster. But the precise date is unimportant.

It is contended that the court below erred in not requiring the appellees to contribute to the expense and maintenance of the boom. The appellants offered in evidence a statement of the account of the Smith-Powers Company with the Coos river boom, commencing September 20, 1907, and ending July 1, 1912, in which it appears that the total sums expended by that company on the booms, including $14,615 paid for various tracts of tidelands, amounted in the aggregate to $31,450.95. There is no evidence that the appellees were ever asked to contribute to any of this expense, or that they ever consented thereto. They were ousted before the major part of the improvements were made. The court below took into consideration the value of the booms, irrespective of the extensive improvements made thereto by the appellants, and fixed the appellees' interest therein at the time of the ouster at the sum of $1,000. We find no ground for holding that that estimate was not just and proper.

The decree is affirmed.