WILLIAM B. SCOTT, Respondent, *v.* THE MIDDLETOWN, UNIONVILLE & WATER-GAP RAILROAD COMPANY, Appellant.

Where a railroad corporation receives railroad material bought upon its credit and for its use by one of its officers, without authority, and uses it for the corporate purposes for which it was designed, this is an adoption and ratification of the act of the officer.

The directors using the material so purchased are bound to inquire and are

presumed to know whether it was paid for or not; it is not, therefore, essential to an adoption of the act of the officer that the directors should know the terms of the contract.

In an action to recover for iron rails and other material alleged to have been so purchased, received and used to lay an extension of defendant's road, defendant called its secretary as a witness; on his cross-examination he testified that, so far as he knew, defendant did not procure any iron from any source to lay the extension. This was new matter, not connected with the testimony called out on the direct examination. The witness was then shown four letters, written by him as secretary of the company to the vendor of the iron, a portion before and the others while it was being delivered. These letters were received in evidence, under objection and exception; they showed knowledge on the part of the writer, and urged a prompt delivery of the rails. *Held*, that the letters were properly received; that, treating the witness, so far as the new matter was concerned, as a witness for plaintiff, it was proper to refresh his recollection by showing him the letters; also, that they were competent as part of the *res gestæ.*

After the delivery of the iron defendant leased its road to the N. Y. & O. M. R. R. Co., which company assumed the debts of defendant. Defendant offered to show entries in the accounts between said lessee and the N. J. M. R. R. Co., of whom C., who delivered the material to defendant, testified that he bought it. In these entries the iron in question was charged by the latter company to the former; this was objected to and excluded. *Held*, no error; that plaintiff's title, or right to recover, could not be affected by transactions subsequent to the delivery between third persons; and that the evidence was not competent as bearing upon the understanding of defendant's directors.

(Argued June 3, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made the first Monday of March, 1880, which affirmed a judgment in favor of plaintiff, entered upon a verdict affirming an order denying a motion for a new trial.

This action was brought to recover the purchase-price of a quantity of iron rails, spikes, bolts, etc., alleged to have been sold and delivered by one Culver to the defendant.

It appeared that the materials in question were delivered to the defendant in pursuance of a contract made by Culver with the then president of defendant; that they were delivered to defendant and used for the purpose of laying the track

on an extension of defendant's road. At the close of the testimony on the trial defendant's counsel moved to dismiss the complaint on the ground that it did not ·appear that the president had any authority to make the purchase.

The further material facts are stated in the opinion.

*Lewis E. Carr* for appellant. The president of a corporation has not power within and of himself, simply because of his official relation to the corporation, to make purchases of materials for the extension of its business, which will be binding upon it. (*Adriance* v. *Roome*, 52 Barb. 399; *Blenn* v. *Bear River, etc., Co.*, 20 Cal. 602; *Walworth Co. Bk.* v. *Farmers' Loan & Trust Co.*, 14 Wis. 325; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546, 557; Angell & Ames on Corporations, § 298; *Western R. R. Co.* v. *Bayne*, 11 Hun, 166, 171; *Westervelt* v. *Radde*, 55 How. 369, 371.) In the absence of evidence showing the extent of the powers of such an officer of a corporation, the presumption is that they were the same as those ordinarily exercised by such officials. (*First Nat. Bk.* v. *Ocean Nat. Bk.*, 60 N. Y. 278, 287.) No attempt having been made to show similar contracts and acts of the president prior to the making of the one relied on, which had been acquiesced in by the corporation, plaintiff's assignor was chargeable with knowledge of Wheeler's want of authority to make the purchase. (*Dabney* v. *Stevens*, 40 How. Pr. 341; *Adriance* v. *Roome*, 52 Barb. 399, 411.)· There was nothing taking the case out of the general rule, that where the act was in connection with the extension of its business, the president had no power to make the purchase on credit. (*Blenn* v. *Bear River R. R. Co.*, 20 Cal. 602.) The ratification relied on was insufficient to create a liability of the corporation, because there was no evidence showing or tending to show that the corporation at any time, until the time of this action, had any knowledge of the purchase or use of this iron on its credit, or of the terms and conditions of the contract. (Angell & Ames on Corporations [7th ed.], § 304, pp. 301, 302; *Adriance* v. *Roome*, 52 Barb. 399, 411, 412; *Dabney* v. *Stevens*, 40 How,

Pr. 341, 350; *Houghton* v. *Dodge,* 5 Bosw. 326, 340; *Pennsylvania, etc., Co.* v. *Dandridge,* 8 Gill & Johns. 248; *Hoyt* v. *Thompson,* 19 N. Y. 207, 218; *Larter* v. *Female Guardian Soc.,* 1 Robt. 598; *Lawrence* v. *Gibham,* 41 Barb. 575; *Smith* v. *Kidd,* 68 N. Y. 130, 142.) The president and other officers of a corporation are special, not general agents. (*Adriance* v. *Roome,* 52 Barb. 399, 411; Laws of 1850, chap. 140, § 6; 2 R. S. 521, § 7 [6th ed.]; *Risley* v. *I. B. & W. R. R. Co.,* 4 N. Y. S. C. [T. & C.] 13, 16; 62 N. Y. 240, 245.) The principal is never held to have ratified the unauthorized act or contract of the agent, whether by the receipt of its fruits, or otherwise, unless at the time he performed the act relied upon for a ratification he had knowledge of the facts and circumstances of the transaction affecting his rights. (Story on Agency, [8th ed.], § 253; *Combs* v. *Scott,* 12 Allen, 493; *Keeler* v. *Salisbury,* 33 N. Y. 648, 653; *Nixon* v. *Palmer,* 8 id. 398; *Seymour* v. *Wyckoff,* 10 id. 213; *Brass* v. *Worth,* 40 Barb. 648; *Roach* v. *Coe,* 1 E. D. Smith, 175; *Howell* v. *Christy,* 3 Lans. 238, 243; *Smith* v. *Tracy,* 36 N. Y. 79, 86; *Balwin* v. *Burrows,* 47 id. 199, 212, 213; *Manning* v. *Gasharie,* 27 Ind. 399; *Smith* v. *Kidd,* 68 N. Y. 130, 142.) There can be no binding contract without the assent of the party sought to be charged. (1 Wait's Law of Actions and Defenses, 83; 1 Addison on Contracts, § 20 [3d Am. from 7th London ed.]; *Dana* v. *Munro,* 38 Barb. 528, 534.) There cannot be an assent without knowledge of the terms and conditions of that to which assent is given. Knowledge of the officer or agent, who has acted or contracted without authority, is not such knowledge as satisfies this essential requirement. (*Dabney* v. *Stevens,* 40 How. Pr. 341, 349, 350, 351; *Hotchkins* v. *Kent,* 8 Mich. 526.) The party to be charged must know of the contract by which he may be bound, before his silence can be construed into an assent. (Story on Agency [8th ed.], § 258.) Proof showing or tending to show that the defendant acquiesced in the acts of the president in excess of his authority was necessary to make it liable. (*Olcott* v. *Tioga R. R. Co.,* 27 N. Y. 540; *Lawrence* v. *Gebhard,* 41 Barb. 575; *Dabney* v. *Stevens,* 40

How. 341; *Martin* v. *Great Falls Manf'g Co.*, 9 N. H. 51; *Knight* v. *Long*, 4 E. D. Smith, 381; *Marine Bank of N. Y.* v. *Clements*, 3 Bosw. 600.) The directors of a corporation are not presumed to know that their agent has made a contract in excess of his authority. (*Dabney* v. *Stevens*, 40 How. 341; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278, 287; *Risley* v. *I. B. & W. R. R. Co.*, 4 N. Y. S. C. [T. & C.] 13, 16; *Pearce* v. *Madison, etc., R. R. Co.*, 21 How. [U. S.] 441; *Adriance* v. *Roome*, 52 Barb. 399.) The declarations or admissions of an agent are only admissible against his principal, where they are part of the *res gestæ*. His subsequent declarations or admissions are not competent. (*Thallhimer* v. *Brinckerhoff*, 4 Wend. 394; *Hogg* v. *Child*, 13 Barb. 246; *Budlong* v. *Van Nostrand*, 24 id. 25; *Baptist Church* v. *Brooklyn F. Ins. Co.*, 28 N. Y. 153; *Cortland Co.* v. *Herkimer Co.*, 44 id. 22; *Luby* v. *Hudson R. R. Co.*, 17 id. 131; *Waring* v. *U. S. Tel. Co.*, 4 Daly, 233; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278, 296, 297; *Niagara Falls Susp. Bridge Co.* v. *Bachman*, 66 id. 261; *Comm.* v. *Pittsburg, etc., R. R. Co.*, 2 Am. Ry. Rep. 220; *White* v. *Miller*, 71 N. Y. 118, 135, 136; *Brown* v. *Nat. Bank of Newport*, 11 Hun, 226.) Wheeler's knowledge was not the knowledge of the corporation, and he had no more authority than the president to bind the corporation by a ratification. (*Dabney* v. *Stevens*, 40 How. 341; *Hotchkins* v. *Kent*, 8 Mich. 526; *Alcott* v. *Tioga R. R. Co.*, 27 N. Y. 546, 561; Angell & Ames on Corporations, § 304.) Wheeler's letters were not admissible for the purpose of contradicting him; he having testified on the trial as to his knowledge of the purchase of this iron, in response to the questions of the plaintiff's counsel, plaintiff could not contradict him. (*Baptist Ch.* v. *Brooklyn F. Ins. Co.*, 28 N. Y. 153, 160; *Waring* v. *U. S. Tel. Co.*, 4 Daly, 233, 240; *Williams* v. *Fitch*, 18 N. Y. 546, 551; *Baird* v. *Gillett*, 47 id. 186; *Coleman* v. *The People*, 58 id. 555, 561, 562; *Petrie* v. *Howe*, 4 N. Y. S. C. [T. & C.] 85; *Farmers', etc., Bank* v. *Whinfield*, 24 Wend. 419; *Anderson* v. *R. W., & O. R. R. Co.*, 54 N. Y. 334.) The acts of the N. J. M. R. R. Co., with reference to

the iron, were admissible against Culver and his assignee, as the acts of his agent, and it was competent to show payment to his agent therefor. (*Thallhimer* v. *Brinckerhoff*, 6 Cow. 90; *Anderson* v. *R. W. & O. R. R. Co.*, 54 N. Y. 334, 340.) In the absence of inquiry by defendant's directors as to how and where the iron used on this road was purchased, defendant had the right to show what such inquiry would have developed. (*Dunn* v. *Hornbeck*, 72 N. Y. 80, 89.) It was error to exclude the evidence offered to show that the building of this extension of the defendant's road was not of any benefit to the defendant in the business in which it was engaged. (*Blenn* v. *Bear River, etc., Co.*, 20 Cal. 602.) By the record of the lease Culver had constructive, and by his relation to these companies, actual notice of this liability. It was therefore proper that payment of this debt by the principal debtor should be shown for the purpose of exonerating the surety. (*Ranney* v. *McMullen*, 5 Abb. N. C. 246; *Russell* v. *Pistar*, 7 N. Y. 171.)

*J. W. Culver* for respondent. Although it was not claimed that the president of the company, by virtue of his office, had absolute authority to bind his company by a contract for the purchase of merchandise, yet *prima facie* he had such authority. (*Booth* v. *Farmers' Bk.*, 50 N. Y. 396; *East N. Y. & J. R. R. Co.* v. *Lighthall*, 5 Abb. [N. S.] 458; *Hayner* v. *The Popular L. Ins. Co.*, 35 Jones & Sp. 266; *Hoag* v. *Lamont*, 60 N. Y. 96; *Wild* v. *N. Y. & Austin Silver Mining Co.*, 59 id. 644.) There was no error in the charge that if the president of the company purchased the property upon credit and the company used the property, they were bound by the contract of purchase. (*Moss* v. *Rossie Lead Mining Co.*, 5 Hill, 137; *Prattis* v. *Short*, 53 How. Pr. 506; *Murray* v. *Brimiger*, 4 Keyes, 107; *Phillips* v. *Campbell*, 43 N. Y. 271.) Culver, the assignor, was competent to testify to the declarations of Wheeler. (Code, § 829; *LaFarge* v. *The Exchange F. Ins. Co.*, 22 N. Y. 352; *The People* v. *The Mut. Gas-Light Co.*, 74 id. 434.) Wheeler's

declarations and letters with reference to the particular transactions in controversy were competent; they constitute the contract under which the materials went into defendants possession and were part of the *res gestœ.* ( *Wild* v. *N. Y. & A. S. M. Co.*, 59 N. Y. 644.)

FINCH, J. That the president of the defendant corporation had no authority derived from his official position to incur the liability sought to be enforced, and that no express and formal action by the board of directors conferring such authority was shown, was conceded in the charge of the court to the jury, and in the approval of that charge by the General Term. By both tribunals the plaintiff's right of recovery was put upon the ground that the iron bought by the president was used in an extension of the company's track, without protest or dissent from the board of directors, who acquiesced in, and thereby ratified the original purchase. The general rule is not here disputed, but the contention is that such ratification could not occur without knowledge by the directors of the terms of the contract, or, at least, of the fact that the purchase was upon the credit of the corporation. But there were no terms of the contract except what the law implies from the acceptance of property sold, which is, that the vendee will pay the value. There was nothing else to know ; no other fact remained ; the only terms of the contract were those implied by the law, which the defendant was bound to know. The more plausible suggestion which, perhaps, to some extent, involves the other is, that the vendee who ratifies, only does so when his use of the purchased article is with knowledge that it was bought on his credit. But it is difficult to see how we can avoid assuming that the company had such knowledge, or, at least, how a jury could resist such natural and necessary inference. There is the iron, being laid in the company's track and appropriated to the company's use. What must a director, looking on, necessarily understand? Evidently, that such iron is sold to the corporation, or given to it or loaned for its use. The supposition of a gift or loan would be so unlikely and improbable, in the ab-

sence of any such actually existing fact, that he could hardly avoid understanding a sale to the company upon its credit. The fact of the delivery of the iron and its appropriation and use by the corporation for its proper and ordinary purposes with his knowledge and assent is some evidence that the directors knew of its sale to the company, and justifies such inference by the jury, especially in a case where there is proof of a sale in fact intended, and no shadow of evidence of either a loan or a gift.

It is argued, however, that such directors might, under peculiar circumstances, have the right to suppose that the iron was furnished upon the credit of some other person or corporation, and that such peculiar circumstances existed in the present case. Still, if there was no gift or loan, the suggestion only changes the inference as to who is the vendor entitled to receive payment, and not the inference that he who appropriates and uses the property does so with a knowledge that he must pay its fair value to the real owner. The circumstances relied upon as justifying the supposition were also shown to have occurred after the delivery and acceptance of the iron, and so could not have affected the inference to be drawn. The lease to the Oswego Midland, by which that company assumed the funded and floating debt of the defendant, was dated May 24, 1871, and finally executed on the 30th of that month. The plaintiff swears that all the iron was delivered before the execution of that lease. In any point of view, therefore, there was evidence in the case tending to prove a ratification and which warranted such a conclusion by the jury.

These views indicate the grounds of our opinion that the motion for a non-suit was properly denied, and that the court correctly charged that if the defendant received the property bought by its president, and converted it to the use of the corporation, and used it for the corporate purposes for which the material was designed, that would be an adoption and ratification of the act of the officer, and that the directors using the material purchased were bound to inquire and presumed to know whether it was paid for or not, and also that the court

properly declined to charge that it was essential to an adoption of the act of the officer that the directors should know the terms of his contract.

The remaining questions in the case relate to the admission and rejection of evidence.

James N. Pronk, the secretary of the defendant corporation, was called as a witness on its behalf. On his direct examination he testified only to the signatures to the lease executed to the Oswego Midland, and to the payment by that company, alone or in connection with the New Jersey Midland, of the cost of grading the extension of the defendant's track. On his cross-examination new matter was broached, not growing out of the testimony he had given. In the course of such cross-examination he testified that, so far as he knew, the defendant did not procure any iron from any source to lay the extension. He was then shown four letters written by him, as secretary of the company, to Culver, the vendor of the iron, which showed that he did know that Culver was to furnish the iron to the defendant. These letters, after having been shown to the witness, were offered in evidence, were objected to as incompetent and immaterial, the objection overruled and an exception taken. Treating the witness, so far as the new matter inquired about was concerned, as a witness for the plaintiff, it was nevertheless proper to endeavor to refresh his memory and correct his recollection by producing and showing to him, his own letters relating to the subject-matter of the inquiry. While they were written after the negotiations of Culver with the defendant's president, they were also written, partly before the delivery of the iron had commenced and partly during the process of its delivery. They purported to come from the general office of the company and the writer was its secretary. We think the letters were admissible as part of the *res gestæ.* (*Wild* v. *N. Y. & Austin Silver Mining Co.,* 59 N. Y. 644.) The secretary was an agent of the corporation, writing the letters in the usual course of business, and in the performance of official duty. The first letter, written in April, 1871, declares the writer's knowledge that Culver was to fur-

nish the iron for " our track," and urges that it be promptly forwarded to prevent " our contractor " from losing his men after the grading should be finished. The next, written in the last of the month, expresses a fear that the iron has been wrongly shipped. The third, written on the 1st of May, again reminds him of the iron and recites the anxiety of " our contractor " to close his work. And the last, dated on the 24th of May, directs that any supplies " for our Unionville extension " may be consigned as before. These letters, therefore, related to current events, to business then in progress, to the delivery and the use of the iron in question, and are not at all open to the criticism of the appellant as being subsequent declarations, or recitals of past events.

Other exceptions argued before us were founded upon the rejection of evidence offered to show the transactions between the New Jersey Midland and the Oswego Midland, with reference to the iron in question, and the assumption and payment of the claims of the former company by the latter. The offers were to show entries in the accounts of the two companies referred to, indicating a charge of the iron by one and its allowance by the other. Such entries were not evidence against the plaintiff, and the transaction was wholly between third persons. The foundation fact sought to be reached did not go far enough to affect or contradict plaintiff's title. Culver says that he bought the iron of the New Jersey Midland. His title is not destroyed, or his right to recover of his vendee affected by such later transactions. It is suggested that the New Jersey Midland was Culver's agent, and payment to the agent might be shown. There was no such agency. The New Jersey Midland was Culver's vendor, having no authority except to deliver the iron as the latter directed. It is further argued that the evidence was admissible as bearing upon the understanding of the directors of the defendant corporation in making use of the iron. But the lease was not made until after the whole or some part of the iron was laid, and the alleged settlement between the New Jersey Midland and the Oswego Midland was still later. How could these subsequent events, in

and of themselves, affect the prior understanding of the defendant's directors?

Other considerations affecting the case generally were very elaborately argued. We have given them due attention, but have failed to find any just reason for the reversal of the judgment. It should be affirmed, with costs.

All concur.

Judgment affirmed.