(33 App. Div. 270.)

## DARLING v. KLOCK.

(Supreme Court, Appellate Division, Third Department.    September 13, 1898.)

1. FRAUD—SALES—CONSPIRACY—EVIDENCE—RES GESTÆ.
   In an action for fraudulent representations, whereby plaintiff was induced to buy worthless stock, misrepresentations of a third person, between whom and defendant there existed a conspiracy to sell the stock, not made in the presence of either plaintiff or defendant, and not communicated to plaintiff, are not admissible as part of the res gestæ.

2. SAME—GOOD FAITH.
   In an action for fraudulent misrepresentations in regard to a silver brick, inducing a purchase of mining stock, where the good faith of defendant and the company (neither being the seller) was attacked, it was proper for defendant to show that the executive committee of the company, which included defendant, had, on receipt of the brick, and before the purchase of stock by plaintiff, decided that the brick should not be exposed to induce the sale of stock.

3. EVIDENCE—INTENT TO DEFRAUD—SIMILAR TRANSACTIONS.
   In an action for fraud inducing a sale, other contemporaneous transactions by defendant of a similar character are admissible on the question of his intent only where fraud was actually accomplished in such transactions.

4. SAME—CORRESPONDENCE.
   Where part of a correspondence is placed in evidence, other portions, to which that in evidence refers, or which are in answer to it, are also admissible.

5. APPEAL—HARMLESS ERROR—EVIDENCE.
   Error in admitting evidence of a thing already established is harmless.

6. SAME—DISCRETION OF TRIAL COURT.
   A motion to strike out testimony, objection to which, if properly taken, would have been good, appeals to the discretion of the trial court

7. TRIAL—EVIDENCE—MOTION TO STRIKE—COMPUTATIONS.
   Where facts from which a mathematical result can be deduced have been shown, testimony as to what that result is will not be stricken out.

Appeal from trial term, Rensselaer county.

Action by Henry H. Darling against Daniel Klock, Jr.  From a judgment in favor of defendant, and from an order denying a new trial, plaintiff appeals.    Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Lansing & Holmes, for appellant.
John H. Peck (E. Countryman, of counsel), for respondent.

MERWIN, J.  The plaintiff in this case claims that by reason of fraudulent representations made by the defendant, or by his authority, he was induced to purchase a large amount of the stock of the Socorro Mountain Mining Company, which was practically worthless, and damages are claimed to the extent of the amount he paid.    The verdict of the jury in favor of the defendant is claimed to be against the weight of the evidence.    The first purchase by the plaintiff was on or about the 19th June, 1890.  He then bought of Theodore B. Mills, through J. N. Van Wagner, at Troy, 5,000 shares of the stock of the company, of the par value of $5 each, at the price of $1 per share.

53 N.Y.S.—38

Other purchases were afterwards made, but the representations upon which the plaintiff relies as a basis for his claim were made at or before the first purchase. In November, 1889, Mills and Van Wagner owned or controlled a silver mine called the "Mountain Chief," situated near Socorro, in the territory of New Mexico. Mills lived at Las Vegas, N. M., and Van Wagner lived at Troy, N. Y. On November 21, 1889, under the laws of New Mexico, a corporation called the "Socorro Mountain Mining Company" was organized by Mills and several others, who were residents of New Mexico, having a capital, as stated in the articles, of $1,000,000, divided into shares of $5 each. One of the first things done by the corporation was to purchase the mine of Mills and Van Wagner, at the price of one-half of the capital stock of the company. The balance of the stock was called "treasury stock," and some of it was authorized to be sold, at a minimum price of $1 per share, for the purpose of raising money for the development of the mine. In the early part of January, 1890, the defendant, who lived at Troy, became owner of 15,000 shares of the stock, which he received from Van Wagner in payment of a loan of $2,500 previously made by him to Van Wagner. This stock was a part of what Van Wagner received in the sale of the mine to the company. The defendant soon after this became a director of the company, and its president, and was such in June, 1890. The representation mainly relied upon by the plaintiff, and as testified to by him, was that a silver brick, called in the case the "large brick," which was then in the possession of Van Wagner, at Troy, and was exhibited to the plaintiff prior to his purchase, was the product of 15 tons of ore taken from the mine. The plaintiff testified that this was said to him by Van Wagner, and also by the defendant. The defendant denied that he, or any one by his authority, made such statement. Van Wagner died before the commencement of the suit. In June, 1890, he was the secretary of the company. The brick was not the product of 15 tons of ore from the mine, but had been purchased and sent by Mills to the defendant on or about the 19th May. The defendant was, as he testified, informed that it represented the value of the silver in 15 tons of ore taken from the mine, according to assays made in the usual way. He claims that he only stated to the plaintiff the facts as he honestly understood them to be. There was also evidence tending to show that the plaintiff, before he purchased, was informed that the large brick was not the product of ore taken from the mine.

In such a case as the present, "the rules of law require a reasonable degree of certainty as to each requisite to constitute the cause of action, viz. representations, falsity, scienter, deception, and injury." Arthur v. Griswold, 55 N. Y. 410. As said in Brackett v. Griswold, 112 N. Y. 454, 457, 20 N. E. 376, there must have been a false representation, known to be such, made by the defendant or by his authority, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with his money; and the absence of any of these elements is fatal to a recovery. The defendant was not the originator of the enterprise. The plaintiff did not purchase any of the defendant's stock, except upon an occasion in November, 1890; and at that time

the purchase was evidently made to get rid of the defendant, who was not then disposed to co-operate with the then managers, including the plaintiff, in further efforts at development.   No question is made that the brick was not in fact as valuable as stated.   The contest was as to whether the statement was made that it was the actual product of the mine.   The plaintiff, upon a visit to the mine soon after his first purchase, seems to have been well satisfied as to the situation.   No doubt, there was silver in the mine; but the trouble was that the expense of reducing the ore, under the circumstances then existing, was greater than the value of the silver that could be obtained.   There was evidence that if there had been a tramway from the mine, and the stamp mill that was in Socorro had been in operation, the mine would have paid commercially.   A careful examination of the voluminous record before us leads to the conclusion that, upon the facts, no good reason is apparent for disturbing the verdict of the jury.   It was for them to say whether all the elements necessary to be shown by the plaintiff in order to maintain his action were in fact established by the evidence.   No fault is found with the charge.

It is claimed by the appellant that the court, in the course of the trial, erred, to the injury of the plaintiff, (1) in excluding the declarations of Van Wagner in regard to the silver brick when attempting to sell stock on other occasions; (2) in allowing the defendant to prove what action was taken by the corporation as to what should be done with the silver brick; (3) in allowing the defendant to testify to what he claimed to have lost in the mining-company speculation; (4) in admitting certain letters written by Mills to defendant after the alleged fraudulent representations of defendant to plaintiff.

1. John P. Wight was called as a witness by the plaintiff, and testified that on the 5th June, 1890, he purchased of Van Wagner, at his office, 1,000 shares of the stock of the company, at $1 a share, and that upon that occasion the brick referred to was exhibited to him, and he had a conversation with Van Wagner about it.   He was then asked to state what Van Wagner said.   This was objected to as immaterial and incompetent.   The plaintiff offered to show that Van Wagner then stated to the witness that the brick was the product of 15 tons of ore which had been taken from the mine, and smelted by the Rio Grande Smelting Company, at Socorro.   The court excluded the evidence.   Neither the plaintiff nor the defendant was present at the transaction with Wight.   The plaintiff claimed that the evidence then showed that there was a conspiracy between Mills, Van Wagner, and the defendant for the sale of the stock of the company, and that, therefore, the statements by Van Wagner on the sale to Wight were competent.   It was not claimed that the statement of Van Wagner to Wight came to the knowledge of plaintiff before he made his purchase, and the plaintiff therefore cannot have or sustain any cause of action in his own favor upon that statement.   Brackett v. Griswold, 112 N. Y. 454, 469, 20 N. E. 376.   It was not a part of the transaction with him. The gravamen of the plaintiff's cause of action was not the alleged conspiracy, but fraudulent statements made to him, and the consequent damage.   Hutchins v. Hutchins, 7 Hill, 107; Brackett v.

Griswold, 112 N. Y. 466, 20 N. E. 376. The action not being based upon a conspiracy, the simple declaration of a co-conspirator, not communicated to the plaintiff, or acted upon by him, would not be a part of the res gestæ, and therefore would not be relevant to the main issue to be tried. In an action for fraud in the sale of property, other contemporaneous transactions by the vendor, of a similar character, are admissible on the question of the vendor's intent to defraud. Beuerlien v. O'Leary, 149 N. Y. 33, 43 N. E. 417. This rule, however, as it has been held, does not include transactions where a fraud was not actually accomplished. Bach v. Tuch, 10 N. Y. Supp. 884; Manufacturing Co. v. Keeler, 65 Hun, 508, 511, 20 N. Y. Supp. 388; Hall v. Naylor, 18 N. Y. 588. In the present case there was no offer to show that Wight was in fact defrauded, or that the representation made was the inducement to the sale. There was no fraud upon Wight, unless he believed the representation to be true, and acted upon the faith of it. Hotchkin v. Bank, 127 N. Y. 329, 337, 27 N. E. 1050. There was no offer to show this. The evidence was evidently offered upon the theory that the declaration of the co-conspirator was competent, without reference to whether a fraud was thereby accomplished. It is to be observed that the sale to the plaintiff was by Van Wagner, as the agent of Mills, of stock which Mills individually owned, and in which the defendant had no interest. The stock sold to Wight was owned by the corporation, and Van Wagner in that transaction acted as the agent of the corporation. Assuming that when this evidence was offered, at the close of plaintiff's case, the evidence was sufficient to authorize the jury to find a combination as claimed by plaintiff, and the act, therefore, of Van Wagner to be treated as the act of defendant, the court did not, I think, err in its ruling. The offer was not broad enough to bring it within the rule as to other fraudulent transactions. The offer was not to show a fraudulent transaction. It should not, I think, be said that an intent to defraud in a transaction in controversy may be inferred from some other transaction, where no fraud in fact is shown to have existed. The evidence offered by the plaintiff to be shown by the witness Marsh does not stand on any better basis. At that time no sale of stock was made.

2. The defendant was permitted to show the action of the executive committee of the company upon the receipt of the large brick, and before the sale to plaintiff, in determining that it should not be exposed for the sale of stock, and that Van Wagner should lock it up in his safe. The executive committee consisted of Van Wagner, the witness Hilliker, and the defendant. No doubt, the matter was within the scope of the power of the committee. The good faith of the defendant, as well as that of the corporation, was attacked by the plaintiff. The plaintiff dealt with Van Wagner. The defendant was charged with fraud as to the brick, and his conduct prior to as well as after the sale to plaintiff was attacked. The evidence was, I think, properly admitted. Besides, it appears that prior to its admission the same thing, in substance, had been testified to by the defendant without objection.

3. It is said that the defendant was erroneously allowed to testify as to the amount of his loss in his dealings with the stock of the company. The plaintiff claims that the amount of the defendant's loss was immaterial. It is not clear that the plaintiff is in a position to raise the question. The defendant was asked "what the total of all this accounting was with regard to his profit and loss." The objection taken was: "Objected to. Let him state the facts." The court made no ruling. The counsel for the defendant then put the question, "We ask for the balance." The objection taken was: "Objected to as improper and immaterial. That they should state the facts showing what sales they made, and what they received from them." The court ruled that was correct. The counsel for the defendant then asked the question: "Mr. Klock, are you able to state to me the amount of moneys raised and paid out on account of the Socorro Mountain Mining Company during the time that you were actually engaged in the company." This was "objected to as before," and objection overruled, and exception by plaintiff. The witness answered that he could, and was then asked to state what those amounts were, on both sides of the account. The witness had a memorandum, which was shown to counsel; and he finally stated that he had received $11,268.34, and paid out $12,416.67, being a loss of $1,148.13. The counsel for the plaintiff then moved to strike out the evidence, on the ground that the amount of his loss was immaterial. The court declined to strike it out. A motion to strike out in such a case—assuming the objection, if properly taken, was good—appeals to the discretion of the court. Besides, it is quite apparent that the main facts which would indicate whether or not the defendant had suffered loss had already been shown, and it only required a computation to indicate the result.

4. Our attention is specially called to a letter offered by the defendant, and admitted over the plaintiff's objection, written by Mills to defendant September 2, 1890. This was specially objected to as being written after the date of any letter introduced in evidence by the plaintiff. It appears, however, from the record before us, that the plaintiff had previously introduced a letter written by the defendant to Mills on September 8, 1890, in which statements were made which might well be considered as referring to the previous letter of Mills to defendant. The defendant was entitled to have both letters read together. The defendant was also allowed to read in evidence a letter from Mills to the defendant dated September 15, 1890. This was in answer to the letter of defendant to Mills on September 8th, and which the plaintiff had introduced in evidence. Some portions of this letter are pointed out as liable to be injurious to the plaintiff, but no motion was made to exclude those when the letter was read. The conduct of the defendant up to the time of the purchase by the plaintiff of the defendant's stock, on the 13th November, 1890, was to some extent involved. The plaintiff introduced a large amount of the correspondence between the defendant and Mills. The defendant put in other portions of the same correspondence. We fail to find in the rulings of the

court on this subject any reversible error. It follows that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.