MEISLAHN v. IRVING NATIONAL BANK.

(Supreme Court, Appellate Division, First Department. June 14, 1901.)

1. APPEAL—RECORD—EVIDENCE—CERTIFICATE—REVIEW—PRESUMPTIONS.
    Where there was no certificate that the record contained all the evidence, it must be presumed that there was sufficient evidence to warrant a verdict, and the facts will not be reviewed.

2. EMPLOYMENT CONTRACT—QUANTUM MERUIT—EVIDENCE—ADMISSIBILITY.
    Where plaintiff performed services without a fixed salary, and sued on a quantum meruit for their value, evidence that defendant paid plaintiff's predecessor in office a certain salary was not objectionable as res inter alios acta, since defendant was privy to the transaction.

3. SAME—SERVICES—VALUE—INSTRUCTION.
    Where plaintiff sued on a quantum meruit for services as a bank clerk, and evidence was admitted as to the salary the bank paid plaintiff's predecessor, it was proper to charge that the jury were not bound, in fixing plaintiff's compensation, by the salary paid to plaintiff's prede-

cessor, but might award him what his services were fairly and reasonably worth.

**4. SAME—CASHIER'S STATEMENTS—ADMISSIBILITY.**

Where, on the resignation of the chief clerk of the bank, who received a salary of $1,500, the cashier informed plaintiff, who was a subordinate check clerk, and received $700 per annum, that he would be expected to occupy the chief clerk's desk, and plaintiff occupied the position for 13 months without any fixed salary, and accepted receipts at his former salary in full of all claims for his services, conversations between the cashier and plaintiff as to the salary plaintiff was to receive were admissible to rebut the prima facie presumption that plaintiff's receipts were in full of his claims for services.

**5. ERROR—ASSIGNMENT—SUFFICIENCY.**

Where incompetent evidence was received against defendant without objection, and a motion to strike it out was denied, defendant cannot assign the court's ruling as error, in the absence of a request for an instruction that the jury should not consider the evidence.

**6. SAME—CASHIER'S AUTHORITY—CONVERSATIONS—ADMISSIBILITY.**

Plaintiff received $700 per annum as a sub check clerk in a bank, and was directed by the cashier to occupy the chief clerk's desk, and that the salary would be made satisfactory at the first of the year. The chief clerk had received a salary of $1,500, and after 13 months' service plaintiff received a letter informing him that his salary would be $900 beginning the next day. *Held*, that a conversation between the cashier and plaintiff just subsequent to plaintiff's receipt of the letter, in which the cashier stated that the salary ought to have been increased from the first of the year, was admissible against the bank, since it had received the benefit of plaintiff's services through the cashier's appointment, and hence it must be presumed the cashier had authority to represent it in communicating with plaintiff.

**7. SAME—FINDING OF FACT—JUSTIFICATION.**

Where plaintiff, a clerk in a bank, was asked by the cashier to occupy the position of chief check clerk, and on several occasions plaintiff was informed by the cashier that the salary would be made satisfactory, the jury were justified in finding that plaintiff remained in defendant's service in the expectation that it would perform the cashier's agreement.

**8. SAME—PAST SERVICES—QUANTUM MERUIT.**

Where plaintiff, who was a clerk in a bank at $700 per annum, was asked by the cashier to occupy the position of chief clerk, the former occupant of which had received a salary of $1,500 per annum, and was told by the cashier that the salary would be made satisfactory, and plaintiff remained in its service 13 months at his former salary before the directors fixed it at $900, the increase to begin from date only, plaintiff was entitled to resign, and to recover the reasonable value of his past services.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Albert Meislahn, Jr., against the Irving National Bank. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action was brought to recover for services rendered by plaintiff to defendant as check clerk from the 31st day of May, 1898, to the 30th day of June, 1899. The complaint contains two counts; one on the theory that plaintiff's salary was fixed at $1,500 per annum, and the other on a quantum meruit. At the commencement of the trial, plaintiff elected to proceed on the cause of action on quantum meruit. Plaintiff entered the employ of the bank in May, 1892, as an extra clerk, working in that capacity, assisting the bookkeepers, for one month, or five or six weeks. He was then assigned to duty as assistant check clerk, which position he held until said 31st day of May, 1898. He received a salary of $600 per annum until May, 1896, or

1897, when it was raised to $700. From that time he continued to draw a salary semimonthly at the rate of $700 per annum, until said 30th day of June, 1899. It was paid to him in cash by the cashier. He was originally employed by the cashier. Until the period for which he seeks to recover compensation in this action, he performed his duties under the supervision and direction of the check clerk. There were several assistant check clerks, whose duties were purely clerical, and performed at one desk, under the supervision of the check clerk. On or about the 24th day of May, 1898, he was informed by the cashier that the check clerk had been promoted to the position of a bookkeeper, and that "we want you to take charge of the desk." Before accepting the desk, plaintiff testifies that he asked the cashier, "How about the salary?" to which the cashier replied "that would be made satisfactory on the first of the year." Plaintiff gave evidence tending to show that he thereupon, relying upon this assurance of the cashier with respect to the salary, took charge of the desk, and performed the duties of check clerk, which were more arduous and responsible than those of assistant clerk, until the 30th day of June, 1899. On receiving his semimonthly salary in an envelope about the middle of February, he said to the cashier, "I do not see any of that $500 in here." To this, according to the plaintiff's testimony, the cashier replied, "That will be all right; you will get that later." In the latter part of March he asked the cashier, "When am I going to get that back pay?" to which the cashier replied, "That will be all right; the committee has that in charge." He testifies that in May he asked the president, "How is that committee getting along?" to which the president replied, "Mr. Meislahn, they wanted to do certain things, and I would not let them," and passed into the directors' room, and closed the door, without making any further answer. With his semimonthly salary on the 30th of June, 1899, the plaintiff received a note from the cashier as follows:

"Beginning with July 1st, 1899, and until further notice, the salary of your present position will be at the rate of $900 per annum. All yearly gratuities and extra compensation are now abolished by order of the board of directors.
"J. Dennison, Cashier."

He then said to the cashier, "Don't I get any back pay for the last thirteen months?" to which the cashier replied, "You will have to see Fancher about that." Plaintiff then called on the president, and said, "Mr. Fancher, don't I receive any back pay for the last thirteen months?" and, according to plaintiff's evidence, the only reply he heard from the president was, "The committee, the committee," whereupon the president walked away from him. Plaintiff then went to the cashier, and said, "You remember, Mr. Dennison, before I took charge of that desk, you said that everything would be made satisfactory on the first of the year." Dennison replied, "I did, and it ought to have been done, too, Meislahn," and asked plaintiff to continue with the bank in that position. That evening plaintiff wrote his resignation, and delivered it to the cashier the following morning. The cashier was sworn as a witness for the bank, but the record does not show that he denied any of these conversations with plaintiff. The president was also called as a witness for the bank, and does not deny that plaintiff talked with him on these two occasions, and interrogated him as testified by plaintiff. He, however, denies having answered in the manner stated by plaintiff, but does not say what answers he gave. At the time of receiving the semimonthly payments, except the last, plaintiff signed a receipt in full, the same as before he became check clerk. After showing that he performed, to the satisfaction of the bank's officers, all of the duties that were formerly performed by his predecessor as check clerk, plaintiff was permitted to prove, under the defendant's objection and exception, that his predecessor received a salary of $1,500 per annum. It does not appear in the body of the case or in the certificate of the judge that it contains all the evidence.

Argued before PATTERSON, HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Grant C. Fox, for appellant.
Charles D. Ridgway, for respondent.

·LAUGHLIN, J.   There being no certificate that the case contains all the evidence, we must presume that sufficient evidence was offered on behalf of the plaintiff to warrant the verdict, and we are not at liberty to review the facts.   Manufacturing Co. v. Seale, 3 App. Div. 515–517, 38 N. Y. Supp. 307; Gregory v. Clark, 53 App. Div. 74, 65 N. Y. Supp. 687; Flood v. Cain, 78 Hun, 378, 29 N. Y. Supp. 156. The only questions open to review on this appeal, therefore, are the exceptions taken to the admission or rejection of evidence and to the charge or refusals to charge.   The first legal error assigned is the admission of testimony as to the salary paid by the defendant to plaintiff's predecessor as check clerk.   The duties of this position consisted of clerical work and in supervising the work of subordinate clerks.   It was routine work of a ministerial character.   There was no delegation of discretion or judgment.   This salary was fixed and paid by defendant for the identical duties and services performed by plaintiff.   This testimony was not received as controlling evidence upon the question of the value of plaintiff's services, but merely as bearing thereon.   Its force and effect were carefully limited by the trial judge in his charge to the jury.   The jury rendered a verdict for the amount which plaintiff would have been entitled to if his salary had been fixed at $1,200 per annum, and, undoubtedly, that is the basis upon which the verdict rests.   It appears, therefore, that this defendant is in no position to complain, unless this evidence was clearly inadmissible for any purpose.   This evidence is not subject to the objection that it was res inter alios acta.   Bouvier says:   "When the party against whom such acts are offered in evidence was privy to the act, the objection ceases."   In stating the limitations upon this maxim, Starkie (Starkie, Ev. p. *85) says:   "A man's own acts, conduct, and declarations, when voluntary, are always admissible in evidence as against him."   Defendant was permitted to show when plaintiff's predecessor entered its employ, and the different salaries he received from time to time during a period of upward of 30 years' employment.   No evidence offered by it in explanation of the payment of this salary to plaintiff's predecessor was excluded.

At the close of the charge an exception appears to have been taken by defendant's counsel to the court's charging the plaintiff's last request, but the record contains no request for a charge on the part of plaintiff.   The only other exception to the charge by the defendant is to the statement of the court, in the body of the charge, where the court instructed the jury that in fixing plaintiff's compensation they were not bound by the salary paid to his predecessor, but should award him what his services were fairly and reasonably worth.   Under the circumstances we think this evidence was competent, and neither the exception thereto nor to the charge on that subject was well taken.

The testimony as to the conversations between plaintiff and defendant's cashier was received under objection and exception as incompetent, and not binding upon the bank.   The point is made upon this appeal that the cashier had no authority to contract on behalf of defendant for an increase of plaintiff's salary, or for extra compensation.   It may well be, in view of the condition of the record, that all

of the evidence relating to the authority of the cashier has not been printed. The cashier, however, was an executive officer of the bank, and represented it in all its business dealings with plaintiff. He was clothed with apparent authority to employ clerks. In the absence of the salary being fixed by the executive board, the clerks so employed would be entitled to recover what their services would reasonably be worth. During the 13 months in question no salary appears to have been fixed for this position. No evidence was offered of any limitation on the authority of the cashier in this regard, excepting that it was shown that the salaries were arranged from time to time by the advisory committee of the board of directors. The cashier presumably had authority to make these representations to induce plaintiff to remain in the employ of the bank. Bank v. Kohner, 85 N. Y. 189; Lee v. Mining Co., 56 How. Prac. 373, affirmed in 75 N. Y. 601; Wilson v. Railroad Co., 114 N. Y. 487, 21 N. E. 1015; Cunningham v. Railroad Co., 63 Hun, 439, 18 N. Y. Supp. 600, affirmed in 138 N. Y. 614, 33 N. E. 1082; Howell v. Dredging Co. (Sup.) 13 N. Y. Supp. 349, affirmed in 129 N. Y. 625, 29 N. E. 1030. All of the conversations with the cashier, excepting the first on May 24, 1898, appear by the record to have been given in response to proper questions called therefor, before defendant's counsel objected. The exceptions are not to the reception of the evidence, but to the refusal of the court to grant defendant's motion to strike it out. The court was not requested to instruct the jury that they should not consider any of this evidence. When incompetent evidence has been received without objection, the court may, in its discretion, deny a motion to strike out such evidence; and the remedy of the party against whom the incompetent evidence is received is to request the court to instruct the jury not to consider it. Woolsey v. Trustees, 155 N. Y. 573, 50 N. E. 270; Darling v. Klock, 33 App. Div. 270, 53 N. Y. Supp. 593, affirmed in 165 N. Y. 623, 59 N. E. 1121; Westervelt v. Burns, 27 Misc. Rep. 781, 57 N. Y. Supp. 749. The representations made and assurances given by defendant's cashier, which were relied on by plaintiff, were also competent to relieve him from the consequences of having signed the receipts in full. Unexplained, the jury might infer that he accepted the salary at the rate of $700 per annum without any intention at that time of making any further claim against the bank. These receipts were prima facie evidence, and open to rebuttal. Ryan v. Ward, 48 N. Y. 204, 8 Am. Rep. 539; Mosel v. Brewing Co., 2 App. Div. 93, 37 N. Y. Supp. 525; Greer v. Telephone Co., 50 N. Y. Super. Ct. 110.

Another exception, concerning which no point is made by the appellant, is deemed worthy of consideration. It relates to the last interview between the plaintiff and the cashier, as narrated in the statement of facts. It appears that after plaintiff received the notice on June 30, 1899, to the effect that his salary would be $900 per annum commencing on the following day, he went to the cashier, and the record shows what occurred at that time as follows:

"Q. What did you say to him? A. I said, 'You remember, Mr. Dennison, before I took charge of that desk, you said that everything would be made

satisfactory the first of the year.' He said, 'I did, and it ought to have been done, too, Meislahn.' Mr. Fox: I object to that, and move that it be stricken out. What Mr. Dennison said, and what ought to have been done, is a mere expression of his own mind. (Motion denied. Exception.) Q. Did he ask you to remain in the bank? A. Yes, sir. Mr. Fox: I object to that as incompetent. Q. As chief clerk? A. Yes, sir. The Court: Objection overruled. (Exception.)"

It will be observed that, while the question did not directly call for the answer of the cashier, the motion to strike out the evidence was not made upon the ground that it was not responsive. Nor did the motion draw the attention of the court to the objection that the cashier's answer, in part at least, was a declaration as to what occurred at a previous interview. It will be remembered that plaintiff had not at this time severed his connection with the bank. This was an interview between him and his superior officer, who had promoted him to this position, and under whom he had discharged its duties for 13 months. The conversation was occasioned by the letter which he had that day received from the cashier fixing his salary for the future, and indicating that he was not to receive any further compensation for past services. This was the first definite action on the part of the bank concerning the salary which he was to receive as check clerk. The fair inference was that the action of the bank at this time was an attempted fulfillment of the agreement made with him by the cashier at the time of his promotion. It was not, therefore, a past transaction, but a continuation of the transaction begun at the time of his promotion. It was a current matter then pending, upon which the cashier was called upon in the performance of his duties to speak for the defendant. The case is the same as if the cashier had stated to plaintiff verbally what was communicated in the letter, and the plaintiff had then made a reply calling out this declaration from him. The bank had received the benefit of plaintiff's services through his employment by the cashier, and presumably authorized the cashier to represent it in communicating with plaintiff, verbally or in writing, its determination with reference to his salary. Being thus authorized by the defendant, his declarations made to plaintiff were admissible against the bank. Scott v. Railroad Co., 86 N. Y. 200; Wild v. Mining Co., 59 N. Y. 644; Wilson v. Railroad Co., supra; Graham's Ex'rs v. Schmidt, 1 Sandf. 74; Howell v. Dredging Co., supra; Lee v. Mining Co., supra.

The jury were justified in finding that plaintiff remained in the employ of the defendant in the expectation that it would perform the agreement of its cashier fixing a salary that would be satisfactory to him. No salary having been fixed during these 13 months, and the salary fixed at the expiration of that period not having been satisfactory to him, he was at liberty to decline to remain longer in the employ of defendant, and to recover what his past services were reasonably worth. Wilson v. Railroad Co., supra.

No other exception requires consideration. The judgment and order should be affirmed, with costs.

O'BRIEN, and HATCH, JJ., concur; PATTERSON, J., in result.

INGRAHAM, J. I cannot agree to the affirmance of this judgment. The plaintiff was employed in a clerical position in a bank at a salary of $700 a year. The position that he occupied was known as "assistant check clerk." Upon the promotion of the check clerk he was assigned to the duties of that position, which he performed until he resigned. When he was made check clerk, he had some conversation with the cashier of the bank about his salary, and was informed that that question would be subsequently considered, but there was no promise to give him an increase of salary. He continued to work for the salary that he had before received, signed at the end of every two weeks a receipt in full for salary to date, and when his salary was finally increased at the end of 13 months to $900 a year he refused to accept it, and resigned. There was certainly no promise, express or implied, to pay him more than the salary that he was paid. The learned judge did not hold that there was any agreement binding upon the bank to pay him an additional salary, but left it to the jury to say whether or not he was entitled to additional compensation for the additional work that he did as a check clerk, and the jury have awarded him a sum in excess of that for which he was employed, and which he received as full compensation for his services. Upon the evidence in the record there is nothing to justify a recovery. I presume, however, that we are precluded from reversing the judgment upon this ground, as there is no certificate that the case contains all the evidence, and we must, therefore, presume that there was sufficient evidence to warrant the verdict. Counsel for the plaintiff, upon the opening of the case, elected to proceed on a quantum meruit, and the plaintiff was allowed to prove, against the objection and exception of the defendant, what the bank had paid to the officer who had before held the position occupied by the plaintiff. The objection to this evidence was put upon the express ground that it was no proof of the value of the plaintiff's services in that position. In submitting this case to the jury the learned trial judge charged that the plaintiff's cause of action was upon a quantum meruit; that is, "that he has rendered some services for this bank, for which he is entitled to ask a jury to make him an award in payment therefor,—that is, that he has rendered these services, and established thereby a right to be paid for them, and what he is to be paid for them is to be fixed by you." Referring then to the testimony admitted over the objection and exception of the defendant, the court charged: "The testimony as to Mr. Taylor's (his predecessor's) salary was allowed because it gave some indication as to what services in that position were mercantilely worth. They paid Mr. Taylor, to be sure, $1,500 a year, and had paid him that for some six years." I do not think this testimony was competent for this purpose. The evidence was uncontradicted that this former employé had been many years in the bank, receiving an increase of salary based upon the length and value of the services rendered. The plaintiff had been in the bank but a few months, and I do not think that the amount paid to this old employé was competent evidence as to the value of the plaintiff's services to the bank, or upon which the value of his services could

be estimated. The amount to be paid to this old and trusted employé, whose many years' experience was a most important element in determining the value of his services, was no basis upon which the jury could determine the value of the services rendered by the plaintiff. I think this evidence is condemned by the cases of Newhall v. Appleton, 102 N. Y. 133, 6 N. E. 120, and Galvin v. Prentice, 45 N. Y. 162, 6 Am. Rep. 58.

I think the judgment should be reversed.